STATE, USE OF JOYCE. ET AL. *v.* HATFIELD ET AL.

[No· 92, October Term, 1950.]

*Decided February 9, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Lewin Wethered* and *L. Wethered Barroll,* with whom were *Paul Berman* and *Sigmund Levin* on the brief, for the appellants.

*Michael Paul Smith* for the appellees.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from a judgment on demurrer to the declaration in a suit under Lord Campbell's act.

The equitable plaintiff is the widow of James L. Joyce. The declaration alleges that: Defendants operate a tavern remote from settlements and only accessible to persons operating automobiles. They knowingly sold intoxicating liquors to Frank M. Love, a minor customer, in violation of Article 2B, section 103, of the Code, and knowingly continued to sell to him in further violation of that section after he had become intoxicated, or at a stage of his intoxication, when defendants in the exercise of due care should have known he was becoming helplessly intoxicated by consumption of such liquor and therefore unable to operate the automobile, in which he had driven himself and others to the tavern, safely away from the premises. Defendants should, by the exercise of reasonable care, have known that the natural and probable consequence of their unlawful conduct in continuing to sell to an already intoxicated minor would cause Love to be unfit to operate his automobile. Defendants negligently and recklessly permitted Love to leave the premises operating his automobile while intoxicated. Directly as a result of defendants' negligent and unlawful conduct a collision occurred when Love in this intoxicated condition left the tavern, operating the automobile at an excessive and unlawful speed, so that he drove to the left of the center of the highway, failing to have the automobile under proper control, and suddenly, without warning, collided with the automobile driven by Joyce, while Joyce was in the exercise of due care, and as a result of the collision Joyce died the next day. It is not alleged that defendants knew, or the fact was, that none of the other persons in Love's automobile was able, and in a fit condition, to drive it, or that defendants knew Love intended to drive it.

The demurrer was sustained on the ground that the proximate cause of the collision was not the unlawful

sale of liquor but the negligence of the person who drank the liquor.

In *Dunlap v. Wagner*, 1882, 85 Ind. 529, the plaintiff lent a horse, apparently to a son or other relative, to be driven in a sleigh. The defendant, a liquor dealer, unlawfully sold to the borrower, the driver, liquor which the driver consumed on the defendant's premises. The driver became intoxicated to the state of unconsciousness. "* * * while in this state, and incapable of controlling the horses, [the driver] was placed in the sleigh, and the horses started homeward by [the defendant]". 85 Ind. 530. The horses ran away, and the plaintiff's horse was killed. In the course of its opinion the court said, "A man who, in violation of law makes another helplessly drunk, and then places him in a situation where his drunken condition is likely to bring harm to himself or injury to others, may well be deemed guilty of an actionable wrong independently of any statute. But we have a statute which provides that every person shall have a right of action for an injury resulting to person or property against one who shall, by selling intoxicating liquors to another, have caused the intoxication of the person by, or through whom, the injury is done." 85 Ind. 530. The defendant was held liable, under the statute, for the value of the plaintiff's horse.

We may assume, without deciding, that on such facts the defendant would be "guilty of an actionable wrong independently of any statute", not, however, for making the driver drunk by selling him liquor, but for placing him bodily, in a state of unconsciousness, in the sleigh and starting the horses. This court has adopted the statement in the Restatement, Torts, § 390 [in a tentative draft, § 260], "One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or from facts known to him should know to be likely because of his youth, inexperience or otherwise, to use it in a manner involving unreasonable risk of bodily harm to himself and others whom the supplier should expect to share in, or be in the vicinity of its use,

is subject to liability for bodily harm caused thereby to them". *Rounds v. Phillips*, 166 Md. 151, 170 A. 532; Id., 168 Md. 120, 177 A. 174, applied this principle to parents who supplied an automobile to their son, an habitually reckless and drunken driver. Cf. *Houlihan v. McCall*, 197 Md. 130, 78 A. 2d 661, *just decided*, in which we recognize the principle as applicable to relations other than that of parent and child, but hold it immaterial and irrelevant when the supplier and the supplied are master and servant or employer and employee, and the master is admittedly liable for the negligence, if any, of the servant which caused the injuries in question. See also *Dixon v. Bell*, 1816, 5 M. & S. 198, holding liable the owner of a loaded pistol, who sent for it a servant too young and not fit to be trusted with it, who in turn, accidentally but negligently, shot the plaintiff.

Evils of intoxication are of record as far back as Noah. They have never been unknown in Maryland. Intoxication is not an excuse for crime, Blackstone, Commentaries, Vol. 4, pp. 25-26 or for torts. Blackstone said, "there are many wholesome statutes * * *, chiefly passed in the * * * reign of king James I., which regulate the licensing of alehouses, and punish persons found tippling therein; or the master of such houses permitting them." Vol. IV, p. 64. In this country (apparently not in England) many civil damage statutes, varying in their scope and their provisions but more or less similar to the Indiana statute above referred to, have from time to time been enacted, creating rights of action for injuries against those who, by selling intoxicating liquors, "caused" the intoxication of the person through whom the injuries were done. In many of the statutes the liability is based on selling, not only unlawful selling. Civil damage statutes were enacted at least as early as 1853 in Indiana, *Struble v. Nodwift*, 1858, 11 Ind. 64; 1854 in Ohio, *Mulford v. Clewell*, 1871, 21 Ohio St. 191; 1857 in New York, *Bertholf v. O'Reilly*, 74 N. Y. 509, 518; 1858 in Maine, *Currier v. McKee*, 99 Me. 364, 366, 59

A. 442; and 1872 in Illinois, *Freese v. Tripp,* 70 Ill. 496. Section 20 of the Volstead Act, Oct. 28, 1919, c. 85, 41 Stat. 305, was such a statute, very broad in scope, but applicable only to unlawful sales, which, however, included all sales for beverage purposes. Many such statutes (*e. g.* the Volstead Act) have been repealed; many have been amended or superseded; some are now in force. So far as we are aware, no such statute has ever been enacted in Maryland, though we hesitate to say that none of our multitude of liquor laws ever contained any such provision. None is now in force.

Apart from statute, the common law knows no right of action against a seller of intoxicating liquors, as such, for "causing" intoxication of the person whose negligent or wilful wrong has caused injury. Human beings, drunk or sober, are responsible for their own torts. The law (apart from statute) recognizes no relation of proximate cause between a sale of liquor and a tort committed by a buyer who has drunk the liquor. In England tort liability of a seller to a person not in privity of contract has been more restricted than in this country. Only recently has it been established in England that liability for sale of a dangerous article extends as far as under *Thomas v. Winchester,* 1852, 6 N. Y. 397, which was distinguished by this court in *State, use of Hartlove v. Fox,* 1894, 79 Md. 514, 29 A. 601, 24 L. R. A. 679, and was followed, in part at least, in *Flaccomio v. Eysink,* 1916, 129 Md. 367, 100 A. 510. See Pollock on Torts (14th Ed., 1939), pp. 399-406. In *Donoghue v. Stevenson,* [1932] A. C. 562, it was held by the House of Lords (two of the five sitting Law Lords dissenting) that a manufacturer of gingerbeer is liable to a consumer for injury caused by a decomposed snail. In *Flaccomio v. Eysink, supra,* 129 Md. 367, 378, 100 A. 510, this court cited one of the many American cases in which a manufacturer of a beverage has been held liable for injury caused by a decomposed mouse. Cf. *Coca-Cola Bottling Works v. Catron,* 186 Md. 156, 46 A. 2d 303; *Cloverland Farms Dairy v. Ellin,* 195 Md. 663, 75 A. 2d 116. No case,

English or American, has been cited, and we have found none, in which (apart from statute) a seller of intoxicating liquor has been held liable for a tort of the buyer who drank the liquor.

Cases to the contrary are limited only by the number of litigants who have carried claims of such liability to appellate courts. There is no case in Maryland. Judge Mason in his opinion cites cases, most of them recent, from a number of states, denying such liability. One case cited by him, which is illustrative of many, concisely states the controlling principle and the opposing contention of plaintiff in the instant case. "Under the common law it is not an actionable wrong either to sell or to give intoxicating liquors to an able-bodied man. The plaintiff urges the need of some regulation imposing liability on a tavern keeper for injury to a third person resulting from the intoxication of one to whom liquor has been sold. He supports this contention by analogies drawn from the so-called squib case, *Scott v. Shepherd,* W. B. L. [W. Bl.] 892, 96 Reprint, 525, 3 Wils. 403, 95 Reprint, 1124. Our attention is called to many cases in jurisdictions where statutes have been enacted making provision for such liability where one has become intoxicated by illegal sale of liquor. * * * The inapplicability of cases of that character to the facts here presented readily appears because we have no similar statute, and because 'in view of the common-law rule, it has been necessary, where opinion favored the creation of such a cause of action, to enact civil-damage laws.' *Demge v. Feierstein,* 222 Wis. 199, [203], 268 N. W. 210, 212. Courts may in proper instances apply old rules to newly created conditions, but they cannot create new rules for conditions already regulated. The common-law rule holds the man who drank the liquor liable, and considers the act of selling it as too remote to be a proximate cause of an injury caused by the negligent act of the purchaser of the drink." *Seibel v. Leach,* 1939, 233 Wis. 66, 67, 68, 288 N. W. 774.

256

Plaintiff argues, earnestly but futilely, that the cases were all wrongly decided, that the common law was not, and is not, as the cases say it is, that the cases are not supported by reason and have acquired no force as authority by repetition and adoption in one jurisdiction after another, that *Seibel v. Leach*, in particular, for authority refers only to a previous Wisconsin case, which itself cited only cases,—"no reasoned authority to support its conclusion."

It would be worse than futile for us to attempt to convince plaintiff by reason, where all other courts have failed and the accumulated mass of authority carries no weight at all. In the circumstances of this case, if we were convinced (as we are not) of the soundness of plaintiff's reasoning, we should virtually usurp legislative power if we should declare plaintiff's contentions to be the law of Maryland. In the course of the last hundred years there probably has seldom, if ever, (except during prohibition) been a regular session of the General Assembly at which no liquor laws were passed. On few subjects are legislators kept better informed of legislation in other states. In the face of the flood of civil damage laws enacted, amended and repealed in other states and the Volstead Act—and of the total absence of authority for such liability, apart from statute—the fact that there is now no such law in Maryland expresses the legislative intent as clearly and compellingly as affirmative legislation would.

*Judgment affirmed, with costs.*