520 A.2d 1115

Christina Renee KUYKENDALL a Minor etc., et al.

v.

TOP NOTCH LAMINATES, INC.

No. 711, Sept. Term, 1986.

Court of Special Appeals of Maryland.

Feb. 9, 1987.
Certiorari Denied June 18, 1987.

George P. Haldeman (S. Allan Adelman and Brett Weiss, on the brief), Rockville, for appellants.

H. Patrick Donohue (Donahue, Ehrmantraut & Montedonico, Chartered, on the brief), Rockville, for appellee.

Argued before GILBERT, C.J., and WEANT and GARRITY, JJ.

GILBERT, Chief Judge.

This appeal represents another attempt to expand the law of torts by creating a new cause of action, which might be entitled "The Employer's Dram Shop Law."

The factual allegations [1] advanced by the appellants are that Evelyn Hargis was killed instantly when the vehicle she was driving was struck head-on on December 23, 1985. Ms. Hargis was survived by her husband, Jesse W. Kuykendall, and a minor daughter, Christina. The complaint asserts that Charles E. Wilkes Jr. and Robert Dean Wade, employees of Top Notch Laminates, Inc., "were driving their separate cars while drunk." According to the appellants, Wilkes and Wade were "swerving back and forth on the roadway trying to pass or to prevent the other from passing." The result of their "horse play" was that "Wilkes swerved across the center line at a high rate of speed directly into the path of the car driven by Evelyn Hargis."

For approximately five-and-a-half hours immediately prior to the collision between Wilkes and Ms. Hargis, he and Wade had been attending a Christmas party given by their employer, Top Notch Laminates, Inc. (Top Notch). Attendance at the party was not required.

The suit charges that "Wilkes and Wade drank constantly from 12:30 P.M. to 5:00 P.M. and became highly intoxicated." The complaint further asserts that Top Notch knew that Wilkes and Wade were intoxicated but continued to serve alcoholic beverages to them.

The appellants asseverate that Top Notch permitted Wilkes and Wade to drive their respective automobiles away from the party even though it was known that the two were intoxicated. Because of the employer-employee relationship, appellants reason that Top Notch could, but did not, prevent Wilkes and Wade from driving while intoxicated.

Jesse Kuykendall, for himself and as personal representative of Ms. Hargis's estate and on behalf of the couple's infant daughter, Christina, filed suit in the Circuit Court for Montgomery County against Top Notch. Pursuant to Md.

---

1. Since this case reaches us by way of an appeal from a dismissal prior to trial, Md. Rule 2–322(a)(2), we must treat the allegations of the complaint as true.

Rule 2–322(a)(2), Top Notch moved to dismiss. Judge L. Leonard Ruben granted the motion, and this appeal ensued.

The issue before us, as seen by the Kuykendalls, is:

"When an employer negligently promotes and permits the intoxication of an employee at the employer's premises during business hours and in the course of an employer's party, and knowingly allows the intoxicated employee to drive from his employment and negligently collide with and kill another, can a jury find the employer liable?"

The forerunner of this appeal was decided by the Supreme Court of New Jersey in *Kelly v. Gwinnell,* 96 N.J. 538, 476 A.2d 1219 (1984), which held liable to a third party a host who served alcoholic beverages to a person who was drunk and who subsequently, in a motor vehicle collision, negligently injured the third party.

Appellant urges that we not only, out-of-the-blue, adopt *Kelly* but that we take a giant step and apply it to an employer who hosts parties for employees. Although *Kelly* does not expressly so state, its clear message is that, in New Jersey, a party host is truly his "brother's keeper." If we apply *Kelly* to the facts in the instant case, the employer-host might well inquire, "Am I my employee's keeper?"

We think it significant to note that *Kelly* did not suddenly appear in New Jersey case law. The *Kelly* decision was the end product of a progression of decisions. Commencing in *Rappaport v. Nichols,* 31 N.J. 188, 156 A.2d 1 (1959) (a liquor licensee was held liable for consequences of customer's negligent operation of motor vehicle); continuing in *Soronen v. Olde Milford Inn, Inc.,* 46 N.J. 582, 218 A.2d 630 (1966) (holding a liquor licensee who served an intoxicated customer alcohol liable in negligence); and through *Linn v. Rand,* 140 N.J.Super. 212, 356 A.2d 15 (1976) (liquor licensee held liable for serving visibly intoxicated minor who injured third party as a result of drunken driving), the New Jersey appellate courts marched steadily toward the *Kelly* pronouncement.

It is obvious from reading the complaint in the instant case that counsel for the Kuykendalls carefully patterned his pleading along *Kelly* lines.[2] Be that as it may, Maryland has not adopted *Kelly* nor has it seen fit, either judicially or legislatively, to embrace a dram shop law action. *Felder v. Butler*, 292 Md. 174, 438 A.2d 494 (1981); *State v. Hatfield*, 197 Md. 249, 78 A.2d 754 (1951); *Fisher v. O'Connor's, Inc.*, 53 Md.App. 338, 452 A.2d 1313 (1982). Indeed, in *Fisher* we stated that we rejected the New Jersey *Rappaport* decision, 53 Md.App. at 340, 452 A.2d 1313, and we pointed out in n. 3, *id.*, that a number of other jurisdictions share the Maryland view.

Patently the Kuykendalls' suit is grounded on a theory of negligence. The elements of actionable negligence are:

"1. a legal duty on the part of the defendant to use due care toward the plaintiff;

2. a failure by the defendant to perform the duty he owes to the plaintiff;

3. some damage to the plaintiff; and

4. which damage was occasioned by the defendant's failure to perform the required duty."

Gilbert, *Maryland Tort Law Handbook*, § 11.1; *see also Myers v. Montgomery Ward & Co.*, 253 Md. 282, 252 A.2d 855 (1969); *Read Drug v. Colwill Constr. Co.*, 250 Md. 406, 243 A.2d 548 (1968).

The focus in the case now before us is on the first of those elements—"legal duty." Generally "duty" requires an actor to conform to a certain standard of conduct so as to protect others against unreasonable risks. *Lamb v. Hopkins*, 303 Md. 236, 241, 492 A.2d 1297 (1985), citing *Prosser and Keeton on the Law of Torts*, § 30 at 164 (W. Keeton 5th ed. 1984). Top Notch had no acquaintance or any other known relationship with the decedent prior to the impact. Ergo, the relationship and duty of care owed by

---

**2.** Whether the allegations could be sustained at trial is an entirely different matter we need not consider.

Top Notch to the decedent was the same as that due any other member of the general public.

In an effort to establish a duty on the part of Top Notch, the Kuykendalls cite Section 315 of the *Restatement (Second) of Torts.* That section provides:

"There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a *special relation* exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a *special relation* exists between the actor and the other which gives to the other a right to protection." (Emphasis added).

Appellants assert that a "special relation" existed between Top Notch (the actor) and Wilkes (the third person) by virtue of their employer-employee relationship. That relationship, appellants contend, conferred a duty upon Top Notch to control the actions of Wilkes, as well as a duty to the general public to protect them from injury by Wilkes.

The Court of Appeals has adopted the principle that there is no liability to a third person absent a "special relationship" with a clear right to control. *Ashburn v. Anne Arundel County,* 306 Md. 617, 510 A.2d 1078 (1986); *Lamb v. Hopkins,* 303 Md. 236, 492 A.2d 1297 (1985). There is nothing in the matter *sub judice* to suggest that Top Notch had a right to control Wilkes's actions after business hours.

It is well established in this State that, in order for an employer to be vicariously liable for the acts of an employee, the employee must be acting within the scope of his or her employment. *Dhanraj v. Pepco,* 305 Md. 623, 506 A.2d 224 (1986); *Watson v. Grimm,* 200 Md. 461, 90 A.2d 180 (1952). The allegations set forth in the Kuykendalls' complaint do not indicate that Wilkes was acting within the scope of his employment when the collision with the Hargis vehicle occurred. The tragedy took place after working hours, off the business premises, and while Wilkes

was driving home in his own vehicle. There is no assertion that attendance at the party was mandatory. On the contrary, the complaint avers that "[n]early all of the employees of the company attended the party." A clear inference may be drawn from that statement that, since all employees did not attend, attendance was not mandatory. Moreover, there is nothing in the complaint to indicate that Wilkes while driving home was furthering any business purpose of his employer. For those reasons, Top Notch is not vicariously liable for the acts of Wilkes under the doctrine of *respondeat superior.*

We turn now to the crux of this appeal. To support their contention that we should hold Top Notch liable for Wilkes's negligent act, the Kuykendalls rely upon *Otis Engineering Corp. v. Clark,* 668 S.W.2d 307 (Tex.1983). The Texas Supreme Court in *Otis* decided that an employer who knew his employee was incapacitated because of intoxication but nevertheless escorted the employee to a motor vehicle and allowed him to drive away could be found negligent. The court permitted suit against the employer on the premise that the employer failed to exercise reasonable care to avoid injury to third persons. Texas appears to have followed a California case, *Brockett v. Kitchen Boyd Motor Co.,* 264 Cal.App.2d 69, 70 Cal.Rptr. 136 (1968). There the employer placed Huff, an intoxicated employee, in Huff's car and directed him to drive home. The California Court held that the affirmative acts of placing the intoxicated Huff in a car and ordering him to drive home imposed a duty on the employer to exercise reasonable care.

The closest case, factually, to the one at bar, however, appears to be *Pinkham v. Apple Computer, Inc.,* 699 S.W.2d 387 (Tex.App.1985). There the court considered a matter in which an employee of Apple attended a company "cook-out." He drank "ten or fifteen cups of beer" and "three drinks of tequila." Sometime during the day, the employee left the party and "smoked one 'joint of pot.'" He then returned to the outing. When the employee finally left the affair, he drove his car as if it were "on top of

eggshells." He collided with a bicycle, injuring one child and killing another. The parents of the deceased child sued Apple Computer, asserting that it was negligent in: (1) furnishing intoxicating liquors to the employee; (2) furnishing intoxicating liquors to the employee after he was intoxicated; (3) failing to ascertain before the employee left the premises whether he was so intoxicated he could not properly drive a vehicle; (4) allowing the intoxicated employee to leave the premises; (5) failing to restrain the employee from leaving; and (6) failing to provide the employee with alternative transportation home.

The Texas Court of Appeals distinguished *Otis*, observing that in it there was, as in *Brockett*, the allegation of an affirmative act on the part of the employer in escorting the intoxicated employee to a motor vehicle and allowing him to drive, but that no affirmative act was present in *Apple*. Similarly, in the matter *sub judice*, the employer, Top Notch, took no affirmative act with respect to Wilkes's operating a motor vehicle.

■ *Felder v. Butler*, 292 Md. 174, 438 A.2d 494 (1981), and *Fisher v. O'Connor's, Inc.*, 53 Md.App. 338, 452 A.2d 1313 (1982), made clear that Maryland has no Dram Shop Act; and, if it is to have one, it is the legislature, not the courts, that should create it. The General Assembly has met, at least annually since those cases were decided, but has not seen fit to enact a Dram Shop Law. It is totally illogical to hold that liquor licensees, those in the business of dispensing alcoholic beverages, who serve intoxicated patrons are not civilly liable to injured third persons, *Felder* and *Fisher, supra*, and yet, on the other hand, declare liable an employer whose employee voluntarily becomes intoxicated at a company party and then while driving home injures a third party.

The gist of the Kuykendall argument is simply that we should judicially impose liability on an employer who provides alcoholic beverages to an employee who subsequently, in an intoxicated state, injures another person.

We decline the appellants' invitation to expand the law of torts so as to permit recovery from employers under the circumstances of this case. If the common law is to be changed so as to allow recovery from an employer for the acts of his employee, notwithstanding the absence of *respondeat superior* or some affirmative act on the part of the employer, either the General Assembly or the Court of Appeals in its role as "law giver" will have to so declare.

As for this Court, we think Judge Ruben correctly granted summary judgment in favor of the appellee, and we so hold.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.