594 A.2d 587

**Maria MORAN**

v.

**FOODMAKER, INC., t/a Chi Chi's, a Maryland Corporation.**

**No. 1001 Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Aug. 28, 1991.

Certiorari Denied Dec. 10, 1991.

Stephen A. Bou (Edward C. Bou, on the brief), Washington, D.C., for appellant.

John J. O'Neill, Jr., Rockville, for appellee.

Argued before BISHOP and FISCHER, JJ., and JAMES S. GETTY, J. (retired) Specially Assigned.

BISHOP, Judge.

Appellant Maria Moran filed suit in the Circuit Court for Montgomery County against Allan Ray Ashley, Jr. (Ashley) for injuries sustained in an automobile accident. After deposing Ashley,[1] appellant filed an Amended Complaint which named appellee Foodmaker, Inc., t/a Chi Chi's (Foodmaker), as a co-defendant. Foodmaker filed a motion for summary judgment which was granted on February 20, 1990. A trial was held on May 21, 1990. Defendant Ashley admitted liability and judgment was entered in favor of appellant. A timely appeal was filed as to appellee Food-

---

[1]. Both parties refer to the deposition testimony of Ashley. According to appellee, Ashley was deposed on October 5, 1988 by appellant and again, on November 7, 1989, by Foodmaker. Neither party, however, included transcripts of these depositions in the Record Extract, and the depositions were not included in the case record. Nevertheless, in its brief, appellee states that "[t]he appellant discusses the injuries incurred and the related medical expenses at length.... For the purposes of the Summary Judgment Motion, the appellee was not contesting the injuries and damages...." Consequently, we will rely on the facts presented by appellant in this case. We will also rely on the parties' Answers to Interrogatories provided in the case record.

maker. One issue was raised which we have rephrased as follows:

I. Whether appellant has a cause of action in tort against appellee, Foodmaker, for its failure to protect appellant from the risk of injury by an intoxicated patron.

## FACTS

On November 24, 1987, appellant Maria Moran left work and drove to Wheaton, Maryland to visit a friend. After arriving at her friend's house, Ms. Moran parked her car and went to the rear of the car in order to get something out of the trunk. At approximately 3:30 in the afternoon, as she was pulling the item out of the trunk, Ashley drove his automobile directly into the rear of Ms. Moran's car, pinning her between the two vehicles. Ms. Moran sustained extensive injuries over her entire body including a shattered left lower extremity with neurovascular compromise and comminuted fractured femur, which resulted in the traumatic amputation of her lower left leg to the high thigh. Her injuries required extensive hospitalization, therapy and rehabilitation. In addition, she suffered from bouts of depression.

Prior to the accident, Ashley had been at Chi Chi's restaurant on Rockville Pike where he consumed approximately four to five drinks of bourbon and coke. Apparently, Mr. Ashley frequented Chi Chi's approximately two times per week during the six months prior to the accident because one of the bartenders would make strong drinks for him. While at Chi Chi's, Ashley became very loud and boisterous, he turned on several beer spigots at the bar and threw glasses onto the floor. At no time was Ashley asked to leave, nor did the employees at Chi Chi's make any attempt to stop serving Ashley alcoholic beverages.

Immediately following the accident, the police tested Ashley's blood alcohol level at .19, well above the legally

permissible level.[2]   Ashley was eventually charged with driving while intoxicated.   He entered a plea of guilty and was sentenced to one year in the Montgomery County Detention Center.   The sentence was suspended and Ashley was placed on three years supervised probation.   The trial court also ordered Ashley to make restitution to Ms. Moran in the amount of $1,000.00.

## DISCUSSION

Drunken driving is a problem of great proportion.   Its cost to society, in terms of the loss of human lives, is immeasurable.   Moreover, "[t]he universal use of automobiles and the frequency of accidents involving drunken drivers are matters of common knowledge."   *Cimino v. Milford Keg, Inc.*, 385 Mass. 323, 431 N.E.2d 920, 925–26 (1982).   According to the National Safety Council, the estimated cost of alcohol-related motor vehicle accidents is about $13 billion and drinking is a factor in fifty to fifty-five percent of all fatal motor vehicle accidents.   National Safety Council, *Accident Facts*, 52 (1988).   The United States National Highway Traffic Safety Administration reported that, in 1988, 20,208 drinking drivers were involved in *fatal* motor vehicle accidents.   U.S. Dept. of Commerce, *Statistical Abstract of the United States 1990*, (110th ed.).   In recent years, the question of who is to pay for the injuries that result from drunken driving has been widely debated and addressed, in various ways, by state legislatures and courts.

Under the traditional common law view, a commercial supplier of liquor could not be held liable for injuries caused or suffered by an intoxicated patron to whom the supplier had furnished alcohol.   This view was based upon the

---

2.   If at the time of testing, the blood alcohol level is .10 percent or more, it is *prima facie* evidence that the person is intoxicated.   Md. Cts. & Jud.Proc.Code Ann. § 10–307(e) (1989 & Supp.1990).

notion that the law recognizes no relation of proximate cause between the sale of liquor and a tort committed by a buyer who has drunk the liquor. *See generally State v. Hatfield,* 197 Md. 249, 259, 78 A.2d 754 (1951). The majority of states, however, through either legislative or judicial action, have departed from this traditional rule.

Today, twenty-three states have dramshop acts which impose civil liability on suppliers of intoxicating beverages in certain circumstances.[3]

At one time or another, thirty-eight states have had some form of dramshop act. These laws were enacted as a result of the efforts of prohibitionists to curtail the availability of alcoholic beverages.... After prohibition ended in 1933, states began to repeal their dramshop acts. By 1978, only eighteen states had such acts on their books, and no state had adopted one in the preceding forty years.

In more recent years, however, dramshop legislation has enjoyed a renaissance.... Moreover, it appears that this trend will continue, this time sparked not by a conviction that liquor is immoral, but rather by public

---

3. States that currently have dramshop acts imposing at least some limited liability on commercial suppliers of liquor include: Alabama, Ala.Code § 6–5–71 (1975); Alaska, Alaska Stat. § 04.21.020 (1990); Arizona, Ariz.Rev.Stat.Ann. § 4–311 to –312 (1989 & Supp.1990); California, Cal.Bus. & Prof.Code § 25602.1 (West 1984); Colorado, Colo. Rev.Stat. § 13–21–103 (1973); Connecticut, Conn.Gen.Stat.Ann. § 30–102 (West 1975 & Supp.1990); Florida, Fla.Stat.Ann. § 768.125 (West 1986 & Supp.1991); Georgia, Ga.Code Ann. § 51–1–18 (1982 & Supp. 1990); Illinois, Ill.Ann.Stat. ch. 43, para. 135 (Smith–Hurd 1986 & Supp.1990); Indiana, Ind.Code Ann. § 7.1–5–10–15.5 (Burns 1991); Iowa, Iowa Code Ann. § 123.92 (West 1987 & Supp.1990); Maine, Me.Rev.Stat.Ann. tit. 17, § 2002 (1983); Michigan, Mich. Comp. Laws Ann. § 436.22 (West 1978 & Supp.1990); Minnesota, Minn.Stat.Ann. § 340A.801 (West 1990); Montana, Mont.Code Ann. § 27–1–710 (1989); New Jersey, N.J.Stat.Ann. § 2A:22A–1 et seq. (West 1987 & Supp.1990); North Carolina, Gen.Stats. §§ 18B–120 et. seq. (1989); North Dakota, N.D.Cent.Code § 5–01–06.1 (1987); Ohio, Ohio Rev. Code Ann. § 4399.01 (Anderson 1989); Utah, Utah Code Ann. § 32A–14–1 (1986 & Supp.1990); Vermont, Vt.Stat.Ann. tit. 7, § 501 (1972); Wyoming, Wyo.Stat. § 12–5–502 (1990).

pressures to deter drunken driving and to compensate the victims of those accidents that do occur.

Comment, *Third Party Liability For Drunken Driving: When "One for the Road" Becomes One for the Courts,* 29 Vill.L.Rev. 1119, 1124–25 (1983–84) (footnotes omitted).

In some states, the Dramshop Act is the exclusive cause of action by which a vendor may be held liable for injuries caused by an intoxicated patron. *See e.g.,* Cal. Bus. & Prof.Code § 25602.1 (West 1984); N.J.Stat.Ann. § 2A:22A–1 et. seq. (West 1987 & Supp.1990). Other states, however, have at some time, recognized a cause of action in negligence based on a violation of the state's alcoholic beverage control act.[4] *See generally* Comment, 29 Vill.L.Rev. 1119, 1138 n. 86 (1983–84). All fifty states and the District of Columbia have alcoholic beverage control acts. Maryland's act provides in part:

§ 118. Sales to minors and intoxicated persons prohibited.

(a) Generally.—

(1) A licensee licensed under this article, or any employee of the licensee, may not sell or furnish any alcoholic beverages at any time to a person under 21 years of age:

(i) For the underage person's own use or for the use of any other person; or

(ii) To any person who, at the time of the sale, or delivery, is visibly under the influence of any alcoholic beverage.

\*       \*       \*       \*       \*       \*

(3)

(i) A licensee or employee of the licensee violating any of the provisions of this subsection is guilty of a misde-

---

4. These states include: Alaska, Arizona, California, Delaware, District of Columbia, Florida, Hawaii, Illinois, Indiana, Iowa, Kentucky, Louisiana, Massachusetts, Mississippi, Missouri, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oregon, Pennsylvania, South Dakota, Tennessee, Utah, Washington, and Wyoming.

meanor and, upon conviction, suffers the penalties provided by § 200 of this article.

Md.Ann.Code art 2B, § 118 (1990).

In general, states which have recognized a cause of action in negligence based on a violation of an alcoholic beverage control act have determined that the injured plaintiff was within the class of persons that the statute was designed to protect, that the tavern keeper owed a duty to the plaintiff and that a breach of this duty imposes civil liability for negligence. For example, in *Jardine v. Upper Darby Lodge No. 1973, Inc.*, 413 Pa. 626, 198 A.2d 550 (1964), the Supreme Court of Pennsylvania affirmed a trial court's finding that a commercial vendor of alcoholic beverages was the proximate cause of injuries suffered by a pedestrian who had been struck by an automobile operated by one of the vendor's intoxicated patrons. In that case, since the dramshop act had been repealed, Pennsylvania's Supreme Court relied upon a legislative act that made it unlawful for any person to sell liquor to one already intoxicated. In enacting this statute, the legislature recognized that an intoxicated person is and can be an instrument of danger to others, especially when operating a motor vehicle. *Id.* 198 A.2d at 533. Since the pedestrian was in the class of persons intended to be protected by the legislative act, and the intoxicating beverages were sold to the customer in violation of the act, the Supreme Court of Pennsylvania affirmed the trial court's finding that the commercial vendor was negligent and its unlawful acts were the proximate cause of the pedestrian's injuries. *Id.*

Similarly, in *Taylor v. Ruiz*, 394 A.2d 765 (Del.1978), the plaintiff-pedestrian brought an action against a tavern owner for injuries sustained when he was struck by an automobile operated by one of the tavern's intoxicated patrons. The Superior Court of Delaware recognized that the State's alcoholic beverage control act made it a criminal offense to serve alcoholic beverages to an intoxicated patron if the tavern owner, or his agents, knew or should have known that the patron was intoxicated. The court held that since

the plaintiff was within the class of persons the statute was designed to protect, the defendant "owed a statutory duty to the plaintiff and a breach of such duty impose[d] civil liability for negligence." *Id.* at 767. *See also Waynick v. Chicago's Last Dept. Store,* 269 F.2d 322 (7th Cir.1959), *cert. denied,* 362 U.S. 903, 80 S.Ct. 611, 4 L.Ed.2d 554 (1960).

Some courts have allowed a cause of action against a vendor based on the vendor's negligence in serving alcoholic beverages irrespective of dramshop acts and alcoholic beverage control laws. *See e.g. Rappaport v. Nichols,* 31 N.J. 188, 156 A.2d 1 (1959) (If the tavern owner knew or should have known that the patron was a minor or intoxicated, his service to that patron might constitute common law negligence.). Other courts have imposed liability only when the vendor's act of serving a customer amounts to willful and wanton misconduct. *See Nally v. Blandford,* 291 S.W.2d 832 (Ky.1956) (A vendor could be liable because he sold a quart of whiskey to the deceased knowing that the deceased intended to drink the entire quart of whiskey without stopping, that he could not be safely trusted with the whiskey and that death might result.); *Hull v. Rund,* 150 Colo. 425, 374 P.2d 351, 352 (1962) (A supplier is liable for injuries if the supplier serves a person in such a condition as to be deprived of her will power or responsibility for her behavior.).

Today, only five states take the position that there can be no civil liability for serving alcoholic beverages in the absence of a dramshop act: Arkansas, Maryland, Nebraska, Nevada and Wisconsin.[5] More than forty years ago, in *State v. Hatfield,* 197 Md. at 254, 78 A.2d 754, the Court of Appeals of Maryland held that "[t]he law, (apart from statute) recognizes no relation of proximate cause between

---

**5.** *See Carr v. Turner,* 238 Ark. 889, 385 S.W.2d 656 (1965); *Felder v. Butler,* 292 Md. 174, 438 A.2d 494 (1981); *Holmes v. Circo,* 196 Neb. 496, 244 N.W.2d 65 (1976); *Yoscovitch v. Wasson,* 98 Nev. 250, 645 P.2d 975 (1982); *Olsen v. Copeland,* 90 Wis.2d 483, 280 N.W.2d 178 (1979).

a sale of liquor and a tort committed by a buyer who has drunk the liquor." In 1981, in *Felder v. Butler*, 292 Md. 174, 438 A.2d 494 (1981), the Court refused to abandon its holding in *Hatfield* and to adopt the modern trend of cases which recognizes a cause of action against a tavern owner by a party injured as a result of the negligent acts of a patron to whom alcoholic beverages were served while the patron was visibly intoxicated. Although the Court recognized that a number of jurisdictions impose civil liability upon vendors of intoxicating liquors for damages caused by their intoxicated customers, it declared that "we decline, for now, to join the new trend of cases...." *Id.* at 184, 438 A.2d 494.

Today, the vast majority of states recognize a cause of action against vendors of alcoholic beverages for the torts of their intoxicated patrons. This liability is based upon dramshop acts, negligence based on the violation of alcoholic beverage control acts, common law negligence, and willful and wanton misconduct.

The problems associated with drunken driving are common knowledge. The consequences of serving liquor to an intoxicated patron, in light of the universal use of automobiles, are foreseeable to tavern owners particularly when the patron is so much under the influence of alcohol that he acts in a loud, boisterous and destructive manner, as is the case *sub judice*. Unfortunately for Ms. Moran and other victims of drunken driving, Maryland remains aligned with the small minority of states which take a rigid and unenlightened approach to the issue of civil liability for commercial vendors of alcoholic beverages.[6] Consequently, under

---

6. Although the Felder court concluded that the failure of the General Assembly to enact a dramshop act constituted an affirmative declaration of public policy, it is clear that nonaction by the legislature, even after an adverse court decision, "affords the most dubious foundation for drawing positive inferences." *United States v. Price*, 361 U.S. 304, 310–311, 80 S.Ct. 326, 330, 4 L.Ed.2d 334 (1960). *See also Automobile Trade Ass'n of Maryland, Inc. v. Insurance Comm'r of Maryland*, 292 Md. 15, 24, 437 A.2d 199 (1981); *Police Comm'r of Baltimore City v.*

**160**

Maryland law, we have no choice but to affirm the trial court's ruling. At the conclusion of the *Felder* case, however, the Court of Appeals stated, that "[w]hether Maryland should abandon the rule in *Hatfield* and align itself with the new trend of cases which impose civil liability upon vendors of alcoholic beverages for the torts of their inebriated patrons depends ultimately upon which line of authorities, all things considered, best serves the societal interest and need." *Felder*, 292 Md. at 183, 438 A.2d 494. Perhaps the Court of Appeals will, at this time, reconsider the rule in *Hatfield*, and make a fresh determination as to "which line of authorities, all things considered, best serves the societal interest and needs" of the people of Maryland.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.

*Dowling*, 281 Md. 412, 420–21, 379 A.2d 1007 (1977); *Harden v. Mass Transit Admin.*, 277 Md. 399, 406, 354 A.2d 817 (1976); *Hearst Corp. v. State Dept. of Assessments & Taxation*, 269 Md. 625, 645, 308 A.2d 679 (1973).