749 A.2d 241

Joseph WRIGHT and Theresa Wright Co–Personal Representatives of the Estate of Anthony Joseph Wright, et al.

v.

SUE & CHARLES, INC., et al.

No. 1379, Sept. Term, 1999.

Court of Special Appeals of Maryland.

April 4, 2000.

Jonathan Ai (David E. Kindermann, on the brief), Rockville, for appellants.

Joanne M. Dicus (Semmes, Bowen & Semmes, on the brief), Baltimore, for appellees, Sue & Charles et al.

Kelli M. Rives (Paul K. Urey, III and Meng & Urey, on the brief), Upper Marlboro, for appellees, Robert and Lois Foard.

Argued before MOYLAN, SALMON and BYRNES, JJ.

MOYLAN, Judge.

With commendable candor, the appellants acknowledge that their primary argument on this appeal is 1) that the substantive law with respect to tort liability for (a) dispensing and (b)

supervising the consumption of alcoholic beverages desperately needs changing and 2) that we, in the course of reversing the judgment against them, should make that substantive change. It is a bold and sweeping invitation. Out of deference, however, to James Madison [1] and other architects of the American governmental scheme, we must decline.

American courts do, indeed, sometimes make law. If it were not so, appellate reports would not be published. Courts, however, make law only on the periphery. They make law when they interpret statutes and constitutional provisions, but they do not enact statutes or frame constitutional provisions. They make law with respect to the procedures and the rules of evidence that facilitate the functioning of the courts. They do not, however, create or change substantive law affecting conduct outside the courtroom. As Justice Holmes explained, "judges ... legislate ... only interstitially." [2]

Time was, of course, when common law courts actually made or changed substantive law, but that practice is no longer a valid precedent. The time was pre–1776 and the place was England (or other places that were still the colonies of England). The rationale for such authority in the common law courts was that the primary source of law was not the people, speaking through a legislative branch, but the King. The courts were simply an arm of the King, as the very extension of the word "court" to those more peripheral venues of the royal presence graphically demonstrates. That law-making prerogative was forever curtailed when American constitution makers, state and federal, designed a radically different governmental scheme incorporating Montesquieu's concept of three coordinate branches of government and the careful allocation of separate powers among those separate branches. If the judicial branch today occasionally strays beyond its

1. *See, e.g., The Federalist* No. 51 (1788).

2. *Southern Pacific Co. v. Jensen,* 244 U.S. 205, 221, 37 S.Ct. 524, 61 L.Ed. 1086 (1917) (dissenting).

assigned turf, it is either an inadvertent lapse or a stealthy usurpation of a power that properly belongs somewhere else.

On April 22, 1997, seventeen-year-old Anthony Joseph Wright ("the decedent"), along with eighteen-year-old Jason Burch, purchased alcohol from appellee Sue & Charles, Inc. (d/b/a "New Hampshire Liquors"). The two boys then proceeded to the home of another acquaintance, Bobby Foard, where the deceased and Burch consumed the alcohol they had earlier purchased. At some time later, the deceased left the Foard home alone in his motor vehicle. The deceased was then involved in a single-car automobile accident in which he was killed.

On April 22, 1998, the appellants, Joseph Wright and Theresa Wright, brought a wrongful death action on behalf of their deceased son in the Circuit Court for Prince George's County. Named as defendants in the Complaint were (1) Sue & Charles, Inc.; (2) Lee Choi and Han Yong Choi, the owners/operators of Sue & Charles, Inc.; and (3) Robert Clebe Foard and Lois Jean Foard, the parents of Bobby Foard. The appellants sought $15 million in damages.

Sue & Charles, Inc. and the Chois filed a Motion to Dismiss the Complaint on the ground that it failed to state a claim on which relief could be granted. On July 27, 1998, Judge Arthur M. Ahalt granted the motion. Thereafter, the Foards also filed a Motion to Dismiss. Six months later, the appellants filed a Motion for Appropriate Relief complaining that a hearing had not been held before the initial granting of the Motion to Dismiss. On July 6, 1999, a hearing was conducted. At the conclusion of that hearing, Judge Ahalt granted the Motion to Dismiss in favor of all defendants. This timely appeal was noted. The appellants allege that the trial court improperly granted the appellees' motions to dismiss. The appellants specifically contend that:

1. The trial court erred in ruling that there is an absolute prohibition on civil liability based on the sale of alcoholic beverages to a minor; and

2. The trial court erred in failing to hold the Foards accountable for the decedent's death based on a theory of "social host liability."

## Dram Shop[3] Liability

The trial court, in granting the appellees' motions, explained:

> As counsel for the Plaintiff recognizes, the law in Maryland has been fairly well established for a considerable period of time concerning liability in situations like this. The Court of Appeals has not spoken with respect directly to some of the issues raised, but it's not the function of this Court to create causes of action.
>
> . . . It's not my responsibility to create new policy or new causes of action, so for all of those reasons, the current state of the law in Maryland requires me to grant the Motion to Dismiss for [all] of the Defendants.

The first case to address the issue presented in this case was *State v. Hatfield,* 197 Md. 249, 78 A.2d 754 (1951). In that case, Frank Love, a minor, bought alcohol at a tavern and consumed the alcohol while on the premises. Shortly thereafter Love operated a motor vehicle and caused a collision in which James Joyce, an innocent party in another vehicle, died. Joyce's widow subsequently brought suit against the tavern and its operators claiming that the defendants were negligent in (1) selling alcohol to a minor and (2) continuing to sell Love alcohol when he was visibly intoxicated and the tavern operators had reason to know Love would have to operate a motor vehicle in order to leave the premises. The trial court would not permit the suit to go forward, holding that the proximate cause of the collision was not the unlawful sale of liquor but the negligence of the individual who drank the liquor.

---

**3.** A "dram" is "as much liquid as is drunk at once; specifically, a drink of spirits." III *The Century Dictionary and Cyclopedia,* (1911) p. 1758. A "dram shop" has come to be known as a "barroom." *Webster's Third New International Dictionary,* (1981) p. 686.

In considering whether the tavern could be held liable for Joyce's death, the Court of Appeals focused on the common law:

> Apart from statute, the common law knows no right of action against a seller of intoxicating liquors, as such, for "causing" the intoxication of the person whose negligence or wilful wrong has caused injury. Human beings, drunk or sober, are responsible for their own torts. *The law* (apart from statute) *recognizes no relation of proximate cause between the sale of liquor and a tort committed by a buyer who has drunk the liquor.*
>
> \* \* \*
>
> *The common-law rule holds the man who drank the liquor liable,* and considers the act of selling it as too remote to be a proximate cause of an injury caused by the negligent act of the purchaser of the drink.

197 Md. at 254–55, 78 A.2d 754 (emphasis supplied). In *Hatfield,* the Court articulated what was then the overwhelmingly majority rule, 197 Md. at 254–55, 78 A.2d 754, that a tavern could not be held liable for the actions of a patron in becoming intoxicated and injuring another individual.

*Hatfield* stood undisturbed for thirty years until *Felder v. Butler,* 292 Md. 174, 438 A.2d 494 (1981), came before the Court of Appeals. The facts in *Felder* were virtually identical to those before the Court in *Hatfield* except 1) that Madeline Hawkins, the intoxicated individual in *Felder,* was not a minor, and 2) that the innocent third party was seriously injured in a motor vehicle collision but was not killed. 292 Md. at 175–76, 438 A.2d 494. Chief Judge Murphy, writing for the Court, framed the question:

> The issue in this case is whether, in light of changes evolving in the common law since our decision in *State v. Hatfield,* 197 Md. 249, 78 A.2d 754 (1951), Maryland should now recognize a right of action in tort against a licensed

vendor of intoxicating beverages for injuries negligently caused by an intoxicated patron to an innocent third party. 292 Md. at 175, 438 A.2d 494.

After discussing its earlier decision in *Hatfield* at great length, the Court recognized the trend in other jurisdictions to back away from the common law position:

> The appellants correctly point out that in the thirty years since *Hatfield* was decided, a number of jurisdictions have departed from the early common law rule and have imposed civil liability, independent of statute, upon sellers of alcoholic beverage for damages caused by their intoxicated patrons. *They urge that we abandon Hatfield[.]*

292 Md. at 178, 438 A.2d 494 (emphasis supplied). After discussing in detail two such cases (*i.e., Waynick v. Chicago's Last Department Store,* 269 F.2d 322 (7th Cir.1959) and *Rappaport v. Nichols,* 31 N.J. 188, 156 A.2d 1 (1959)), the Court of Appeals recognized that at least twenty-one other jurisdictions had followed suit and permitted an establishment selling liquor to be held civilly liable for damages caused by an intoxicated patron. 292 Md. at 180–81, 438 A.2d 494.

The Court of Appeals, although recognizing the great importance of the common law and of *stare decisis,* suggested that those restraints would not necessarily bind the Court:

> Of course, the common law is not static. Its life and heart is its dynamism—its ability to keep peace with the world while constantly searching for just and fair solutions to pressing societal problems like that presented by the senseless carnage occurring on our highways, due in no small measure to the drinking driver. The common law is, therefore, subject to modification by judicial decision in light of changing conditions or increased knowledge where this Court finds that it is a vestige of the past, no longer suitable to the circumstances of our people.

\* \* \*

Although of great importance, we have not construed the doctrine of *stare decisis* to prevent us from changing a rule

of law if we are convinced that the rule has become unsound in the circumstances of modern life.

292 Md. at 182–83, 438 A.2d 494. Despite that dubious [4] panegyric to judicial law-making power, however, the Court declined to create substantive legal liability and acknowledged that the proper modality for such change would be legislative and not judicial. Judge Murphy concluded:

> Whether Maryland should abandon the rule in *Hatfield* and align itself with the new trend of cases which impose civil liability upon vendors of alcoholic beverages for the torts of their inebriated patrons depends ultimately upon which line of authorities, all things considered, best serves the societal interest and need. *That determination clearly impacts on the development of the law relating to the dispensing and consumption of alcoholic beverages, a subject long pervasively regulated by the legislature.* ... The absence of any statute in Maryland creating a civil cause of action in such circumstances prompted the Court in *Hatfield* to conclude that the legislature did not intend to impose civil liability upon alcoholic beverage vendors for the tortious acts of their intoxicated customers.

* * *

> *[S]ince the legislature has not yet created dram shop liability by statute, we decline, for now, to join the new trend of cases* initiated by *Waynick* and *Rappaport.*

292 Md. at 183–84, 438 A.2d 494 (emphasis supplied).

A flurry of cases in the 1980s and early 1990s dealt with related sub-issues. One year after *Felder* was decided, this Court considered *Fisher v. O'Connor's, Inc.,* 53 Md.App. 338, 452 A.2d 1313 (1982), a case in which an intoxicated tavern

---

4. The undoubted entitlement to "change a rule of law" is not the same thing as an entitlement to create substantive law. Reference to the sweeping law-creating capacity of the early English common law is not an apt analogy for latter-day American courts. American courts, state and federal, operate under the constitutional constraint of the separation of powers doctrine that did not inhibit early English courts.

patron fell from a bar stool while still in the tavern and injured his leg. The injured patron sued the tavern for his injuries. Chief Judge Gilbert, writing for our Court, recognized the well-established body of law which prohibited such recovery:

> *Felder* and *Hatfield* made pellucid that in Maryland, absent a Dram Shop statute that authorizes an action for damages against the owner of a tavern for injuries to third persons caused by the bar owner's intoxicated patrons, no such claim lies.

53 Md.App. at 340, 452 A.2d 1313.

This Court then reiterated what had been said in *Felder,* that, if any change in the status of the law were to come about, it should properly be done by the Legislature and not by the courts. The fact that the injury in *Fisher* occurred to the intoxicated individual himself rather than to an innocent third party, as in *Hatfield* and *Felder,* was of no consequence. We held in *Fisher:*

> The Court of Appeals has made crystal clear in *Felder* and *Hatfield* that if a civil cause of action is to be permitted against a bar or tavern owner for injuries to third parties caused by the intoxicated patrons of those bars or taverns, it is for the Legislature, not the Courts, to create the legal remedy. *We perceive no reason why that rationale does not logically apply to suits against the bar or tavern owner by the patrons themselves.*

53 Md.App. at 343, 452 A.2d 1313 (emphasis supplied).

The next case decided by our Court that adverted to the topic of Dram Shop liability was *Kuykendall v. Top Notch Laminates, Inc.,* 70 Md.App. 244, 520 A.2d 1115, *cert. denied,* 310 Md. 2, 526 A.2d 954 (1987). In *Kuykendall,* two employees of the defendant corporation had been attending a company Christmas party, in the course of which the employees consumed alcohol. Those employees, while subsequently driving separate vehicles and engaging in "horse play" on the roads, were involved in a collision in which Evelyn Hargis, an innocent third party in another vehicle, was killed. Suit was

filed against the corporation as the employer-host of the intoxicated individuals. 70 Md.App. at 245–46, 520 A.2d 1115.

Chief Judge Gilbert declined to adopt an "Employer's Dram Shop Law," *see* 70 Md.App. at 245, 520 A.2d 1115, in light of the precedents set by earlier Maryland cases:

> *Felder v. Butler,* and *Fisher v. O'Connor's, Inc.,* made clear that *Maryland has no Dram Shop Act; and if it is to have one, it is the legislature, not the courts, that should create it.* The General Assembly has met, at least annually since those cases were decided, but has not seen fit to enact a Dram Shop Law.

70 Md.App. at 251–52, 520 A.2d 1115 (emphasis supplied).

The most recent reported case on the issue of Dram Shop liability is *Moran v. Foodmaker, Inc.,* 88 Md.App. 151, 594 A.2d 587, *cert. denied,* 325 Md. 17, 599 A.2d 90 (1991). In that case Maria Moran was critically injured when a vehicle driven by Allan Ashley Jr. struck her while she was standing behind her parked vehicle. Ashley was intoxicated at the time and had previously been a patron at Chi Chi's Restaurant.

Judge Bishop, writing for this Court, began by summarizing the then-current state of the law with regard to Dram Shop legislation. Twenty-three states had enacted Dram Shop statutes which permitted the imposition of civil liability on suppliers of intoxicating beverages in certain circumstances. 88 Md.App. at 155, 594 A.2d 587. Numerous courts in other jurisdictions also permitted such suits, even absent a Dram Shop liability statute. As of the writing of the *Moran* opinion, only five states, including Maryland, still took the position that there was no civil liability for serving alcoholic beverages.[5] 88 Md.App. at 158 n. 5, 594 A.2d 587.

---

**5.** The other four states were Arkansas, Nebraska, Nevada, and Wisconsin. Two of those states, however, have since abandoned the approach and gone with the majority rule. *See Jackson v. Cadillac Cowboy, Inc.,* 337 Ark. 24, 986 S.W.2d 410 (1999), *overruling Carr v. Turner,* 238 Ark. 889, 385 S.W.2d 656 (1965), and *Sorensen v. Jarvis,* 119 Wis.2d 627, 350 N.W.2d 108 (1984), *overruling Olsen v. Copeland,* 90 Wis.2d 483,

■ The law in Maryland is nonetheless clear and unambiguous. The appellants cannot maintain an action against Sue & Charles, Inc., or the Chois for the death of their son because he voluntarily consumed alcohol and voluntarily got behind the wheel of a vehicle. As *Hatfield* made clear, the responsibility rests on the individual who chooses to drink and not on the liquor store that sells.

The appellants make a futile attempt to distinguish *Hatfield* on the grounds 1) that the deceased in the instant case was a minor and 2) that the injury in *Hatfield* was to a third person rather than to the intoxicated individual himself. As to the former distinction, the intoxicated individual in *Hatfield* was also a minor, and we are at a loss as to how the appellants are attempting to distinguish that case. As to the latter distinction, our decision in *Fisher* made eminently clear that the general rule of law espoused in *Hatfield* encompassed injuries to the intoxicated individual as well and was not limited to injuries to third parties.[6]

### Social Host Liability

The appellants also seek to impose liability on the Foards for negligently permitting the deceased to consume alcohol at their residence. The appellants allege that (1) the Foards encouraged Anthony Wright and Jason Burch to consume alcohol, (2) the Foards knew that Wright was a minor, and (3)

---

280 N.W.2d 178 (1979). Thus, Maryland is now one of only three jurisdictions that does not entertain Dram Shop lawsuits.

**6.** The appellants also allude to a possible distinction that in the instant case, the Chois sold liquor for consumption off the premises, while in *Hatfield* and subsequent cases, the individuals consumed alcohol while on the premises from which they purchased the alcohol. The distinction the appellants point out, if anything, weakens their argument. If Maryland courts have not seen fit to impose liability on owners of taverns who can observe first-hand the effect that alcohol consumption may have on the patron, surely they would decline to impose liability on an establishment that has no idea what the individual who purchases alcohol and then leaves does once he or she is no longer on the premises.

the Foards were aware that Wright had been consuming alcohol while at their home.

The controlling case is *Hebb v. Walker*, 73 Md.App. 655, 536 A.2d 113, *cert. denied*, 312 Md. 601, 541 A.2d 964 (1988). In that case, the parents of seventeen-year-old Robert Johnson went out of town on a business trip. Without their knowledge, their son hosted a party at the Johnson home while they were away. Attending the party, although not specifically invited by Johnson, were fifteen-year-old Holly Walker and fourteen-year-old David Hebb. The two of them arrived together with another friend in a vehicle being driven by Walker, and they brought their own alcohol to the party. After staying at the party for approximately one hour, the group left in a vehicle being driven by Walker. Subsequently, Walker caused an automobile accident in which Hebb was killed. *Id.* at 658, 536 A.2d 113. David Hebb's parents then sued Robert Johnson and Johnson's parents for the wrongful death of their son.

Chief Judge Gilbert characterized the issue before us:

> Appellants seek to have us decide that a seventeen-year-old social host who serves alcoholic beverages to other minors is liable to a third person for harm caused by the negligence of an intoxicated guest. What this appeal actually represents is yet another attempt to import into Maryland a form of Dram Shop liability.

73 Md.App. at 658, 536 A.2d 113. After discussing *Felder*, *Fisher*, and *Kuykendall*, Judge Gilbert reasoned that if Maryland declines to extend civil liability to an establishment that sells liquor to intoxicated patrons who then act negligently, Maryland would also decline to extend civil liability to a mere social host who has a lesser duty:

> Surely a liquor licensee must owe a business patron a higher duty of care than does a social host to a guest. Yet, the liquor licensee, as we have seen, is not liable for the motor torts of his intoxicated patrons.

73 Md.App. at 659, 536 A.2d 113. By parity of reasoning to the non-liability imposed on a liquor store or tavern, *Hebb* similarly concluded:

As we see it, social host liability is a near relative of a Dram Shop action. No jurisdiction which refuses to sanction Dram Shop law recognizes social host liability.

There may be, as appellants seem to suggest, a societal demand for the creation of a social host liability. If that form of civil redress is to be allowed, *it is the Legislature that must enact the necessary laws, not the courts.* That is the clear and unmistakable message of the *Felder, Fisher,* and *Kuykendall* trilogy. Currently, *there is in this State no social host liability to a party who is injured as a direct or indirect result of the host's having served alcohol to the tort feasor.*

73 Md.App. at 661, 536 A.2d 113 (emphasis supplied; footnote omitted).

■ The appellants seek to distinguish *Hebb* on the grounds that (1) the party host in *Hebb* was a minor, (2) Walker and Hebb were not invited to the Johnson party but Anthony Wright was invited to Bobby Foard's house, and (3) Walker and Hebb had consumed alcohol prior to arriving at the Johnson party while Anthony Wright had not. Those are distinctions without differences. The message of *Hebb* is clear: Maryland does not recognize a cause of action for social host liability. Whether such a cause of action is necessary or desirable is, in our democratic scheme of things, a decision for the people themselves to make, speaking through their properly accountable legislative representatives.

***JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.***