REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2533

September Term, 2013

NANCY DAVIS, ET AL.

v.

LINDA STAPF, ET AL.

Krauser, C.J.
Graeff,
Nazarian,

JJ.

Opinion by Graeff, J.
Concurring opinion by Nazarian, J.

Filed: August 26, 2015

It is a criminal offense for an adult to knowingly or willfully allow an unrelated person under the age of 21 to consume alcohol for nonreligious purposes at a residence the adult owns or leases.  Md. Code (2014 Supp.) § 10-117(b) of the Criminal Law Article ("CL"). The question raised in this case is whether a person who violates this statute has a duty of care that can result in civil liability when an intoxicated minor subsequently is injured.

On November 28, 2009, 17-year-old Steven Dankos was drinking at a party.  He was killed when the truck in which he was riding, driven by another intoxicated partygoer, crashed.  Nancy Davis, individually, as Mother and Next Friend of Steven Dankos, decedent, and as Personal Representative of the Estate of Steven Dankos, appellants (collectively "Ms. Davis"), filed suit against Linda Stapf, appellee, in the Circuit Court for Howard County. Ms. Stapf filed a motion to dismiss the complaint, arguing that she owed no duty of care to Steven under Maryland law, and therefore, the complaint failed to state a claim upon which relief could be granted.  After a hearing, the court granted Ms. Stapf's motion to dismiss.

On appeal, Ms. Davis presents three questions for our review, which we have consolidated and rephrased, as follows:

1.      Did Ms. Stapf have a statutory duty to Steven pursuant to CL § 10-117(b), which prohibits adult property owners from allowing minors to consume alcoholic beverages on their premises?

2.      Did Ms. Stapf have a duty of care to Steven based on a special relationship that was created when she hosted an underage drinking party on her property and knowingly permitted Steven to consume alcohol?

3.      Did Ms. Stapf assume a duty to prevent harm to Steven, where she knew he and other minors were consuming alcohol on her property,

exercised control over the people who were present at her house, and controlled the flow of alcohol?

For the reasons set forth below, we shall affirm the judgment of the circuit court.

**FACTUAL AND PROCEDURAL BACKGROUND**

Because this appeal involves the propriety of the circuit court's ruling granting a motion to dismiss, we look to the facts alleged in the complaint. The facts alleged in Ms. Davis' first amended complaint are as follows.

In 2009, Steven was a senior at River Hill High School in Clarksville, Maryland, where he played on the football team. Ms. Stapf had a son, Kevin, then 19 years old, who had attended River Hill. Ms. Stapf's residence was known among River Hill students as a "party house," due to Ms. Stapf's willingness to "permit and condone underage drinking." With Ms. Stapf's approval, express or tacit, her residence was used "virtually every weekend" for parties where alcohol was consumed by underage persons.

On November 28, 2009, a party was held at Ms. Stapf's residence. Two days prior to the party, Ms. Stapf purchased approximately $115 worth of alcohol. Kevin also illegally purchased alcohol. The alcohol was kept, maintained, and cooled in Ms. Stapf's garage.

At approximately 10:00 p.m., Ms. Stapf, who had been next door, returned to her residence. At that time, there were approximately 20 vehicles parked in her driveway and on the street adjacent to her house. Several young people were walking down the street to her house, and there was a large crowd of people on her property congregating in the garage.

Due to the size of the party, and that she did not know a number of the people who were at the party, Ms. Stapf asked Kevin to make some of the people leave. Ms. Stapf also made a judgment call as to which individuals could stay, including David Erdman, who had been drinking for several hours and was "obviously intoxicated." Mr. Erdman was 22 years old at the time.

Ms. Stapf requested that one of Kevin's friends move her truck to block the driveway to discourage additional people from parking in the driveway. As a result of Ms. Stapf's intervention, a number of people left the party, and a smaller group of Kevin's friends and acquaintances stayed in the garage, with Ms. Stapf's permission.

Ms. Stapf, who appeared at least four times at the garage party, observed numerous underage individuals drinking alcohol. Despite her actual knowledge that underage persons were consuming alcohol at her house, and her ability to control, prohibit, and limit the consumption of alcohol at her residence, Ms. Stapf did not tell anyone to stop drinking alcohol, nor did she take any steps to prevent intoxication.

While the party continued in the garage, Ms. Stapf played solitaire in the kitchen, in close proximity to the garage. At approximately 1:30 a.m., Ms. Stapf asked that the music be turned down. At some point in the early morning hours, Kelsey Erdman, Mr. Erdman's younger sister, came into the kitchen and told Ms. Stapf that she was concerned about Mr. Erdman driving his truck home. She stated that Mr. Erdman was embarrassing her, and she asked Ms. Stapf if she should drive him home. Ms. Stapf had seen Mr. Erdman consume

alcohol throughout the evening, and she knew that Kelsey was concerned about his level of intoxication. Nevertheless, Ms. Stapf did not recommend that Kelsey drive Mr. Erdman home or do anything else in response to Kelsey's request for assistance. She did not call Mr. Erdman's parents regarding his condition and inability to drive. Nor did she check Mr. Erdman's condition, attempt to take his keys, or ask Mr. Erdman to stay at her residence until he was sober.

Ms. Stapf knew that Steven, Mr. Erdman, and Mr. Erdman's 18-year-old brother, Thomas Erdman, consumed alcohol at her residence and were intoxicated as a result. She observed that Steven and Thomas were "not right, tired, like drunk." Ms. Stapf knew or should have known that, by the early morning hours of November 28, Mr. Erdman was so intoxicated that he could not stand without assistance. Nevertheless, she did not call any parent to inform them that their children were illegally consuming alcohol, were intoxicated, and could not drive safely home. She also did not intervene and refuse to permit any intoxicated drivers from leaving her residence by car, despite knowing that they were intoxicated and unable to safely and legally operate a vehicle.

At approximately 2:48 a.m. on November 29, Mr. Erdman left the party with Thomas and Steven. Mr. Erdman drove his parents' 1994 GMC pickup truck. Thomas sat in the front passenger seat, and Steven rode in the bed of the truck. Shortly after leaving Ms. Stapf's residence, Mr. Erdman crashed the truck on Folly Quarter Road. Steven was ejected from the truck and killed. Mr. Erdman's blood alcohol concentration at the time of

the accident was .21 grams per 100 milliliters of blood; more than 2.5 times the legal limit. Steven's blood alcohol concentration was between .21 to .30 grams per 100 milliliters of blood.

On October 28, 2010, Ms. Stapf was charged with allowing underage persons to drink alcohol in violation of CL § 10-117(b). The State ultimately placed the charge on the stet docket.

On January 20, 2010, Mr. Erdman was charged with, *inter alia*, committing a homicide with a motor vehicle while under the influence of alcohol. He entered a guilty plea, and the court sentenced him to five years of incarceration, all but 18 months suspended.

On November 27, 2012, Ms. Davis filed the Complaint. On May 22, 2013, she filed the First Amended Complaint. In Count I, social host liability, she alleged that Ms. Stapf, as the host of the party, owed a "duty to ensure that alcohol was consumed with care and refrain from allowing intoxicated persons such as [Mr.] Erdman from continuing to consume alcohol," and she "also owed a duty to all who travel on the roadways to refrain from allowing intoxicated individuals to drive a vehicle while intoxicated." Ms. Davis alleged that Ms. Stapf breached this duty when she permitted Mr. Erdman to continue consuming alcohol while he was intoxicated and failed to stop Mr. Erdman from driving, despite knowing that he was unable to drive due to his level of intoxication. As a direct and proximate cause of Ms. Stapf's breach of duty, Mr. Erdman crashed the truck, resulting in Steven's death.

In Count II, "Negligence – Duty to Person in Class Statute was Designed to Protect," Ms. Davis alleged that Ms. Stapf owed a duty to Steven, who was a member of the class of people meant to be protected by criminal statute CL § 10-117(b), which "prohibits an adult from knowingly and willfully allowing an individual under 21 years of age to possess or consume an alcoholic beverage at a residence or within the curtilage of a residence that the adult owns and in which the adult resides."[1]  Ms. Davis alleged that Ms. Stapf breached that duty when she permitted a party to occur at her residence knowing that underage persons, including Steven, were illegally consuming alcohol.  She asserted that Ms. Stapf knew or should have known that Steven was intoxicated and unable to care for himself, and Ms. Stapf's actions were "a direct and proximate cause of [Steven's death] because [his] degree of intoxication prevented him from making an intelligent and informed decision about getting into a vehicle with a drunk driver" and climbing into the back of a pickup truck without using a seatbelt.

In Count III, Negligence - Duty to Act, Ms. Davis alleged that Ms. Stapf, standing *in loco parentis* to Steven and other minors on her property, assumed a duty of care to protect them from harm resulting from her illegal actions, including preventing Steven, who was unable to make informed and intelligent decisions, from riding in the bed of truck driven by

---

[1] In the complaint, Ms. Davis asserted that Steven was a member of the class intended to be protected by two other criminal statutes in addition to Md. Code (2014 Supp.) § 10-117(b) of the Criminal Law Article ("CL"):  CL § 3-602.1 and CL § 3-204.  On appeal, Ms. Davis asserts only that Steven was an intended protectee of CL § 10-117(b).  Therefore, we will address only the arguments raised in the pleadings relating to CL § 10-117(b).

a drunk driver. Ms. Davis alleged that Ms. Stapf breached her duty to Steven by failing to: prevent him from getting into the vehicle driven by a drunk driver, confiscate the keys of any individuals drinking at her house, contact Steven's parents to inform them of the situation, make sure Steven remained at her house until he could make an informed and intelligent decision, prevent Mr. Erdman from leaving her property after Kelsey told her that she was concerned about him driving due to intoxication, and locate a sober driver to take Steven home.

Counts IV and V asserted claims for wrongful death and survival based on Ms. Stapf's negligence.

Ms. Stapf moved to dismiss the complaint on four grounds. Specifically, she asserted: (1) "Maryland does not recognize social host liability or dram shop liability"; (2) Ms. Stapf's alleged violation of a nonprescriptive criminal statute did not establish tort liability; (3) Ms. Stapf did not stand *in loco parentis* to Steven; and (4) Ms. Stapf "did not assume a legal duty by permitting a party to occur."

In Ms. Davis' opposition, she argued that the court should deny Ms. Stapf's motion to dismiss for several reasons. First, she argued that Ms. Stapf owed a duty to protect her underage guests on her property based on a "special relationship" that "existed between her and these guests as the sole authority figure that monitored the actions of the party goers based on the doctrine of *in loco parentis*." Second, she asserted that Ms. Stapf owed a duty of care to Steven, a minor, pursuant to CL § 10-117(b), which prohibits adults from

permitting unrelated minors to consume alcohol in their homes. Ms. Davis asserted that Steven was in the class of individuals CL § 10-117(b) was designed to protect, i.e., underage drinkers, and the harm suffered by Steven was the type of harm against which the statute was designed to protect.

Third, Ms. Davis argued that Ms. Stapf assumed a duty to Steven when she permitted the party to occur in her garage where underage persons were illegally consuming alcohol. She asserted that Ms. Stapf assumed a duty to protect the minors when she monitored the party and permitted the underage drinking.

At the hearing on the motion to dismiss, the parties reiterated the arguments presented in the written filings. Counsel for Ms. Davis, however, did expound on the argument that there was a "special relationship" creating a duty. Counsel stated that the facts supported a basis for the existence of such a relationship, which "[w]e've characterized . . . as in loco parentis relationship, which is one recognized under Maryland law." Counsel cited *Biscan v. Brown*, 160 S.W.3d 462 (Tenn. 2005), arguing that the "crux and the nature of the special relationship is one of exercising control" and asserting that Ms. "Stapf owed a duty . . . based on her actions of monitoring the party, exercising judgment and control over who could be there, taking steps to have someone move a vehicle to obstruct the driveway." Those facts, counsel asserted, "establish[] a special relationship."

At the conclusion of the hearing, the court made oral findings. With respect to the issue of social host liability, the court reviewed prior cases on this issue and stated that "there

is in this state no social host liability to a party who is injured as a direct or indirect result of the host having served alcohol to a tortfeasor." The Court quoted *Wright v. Sue & Charles, Inc.*, 131 Md. App. 466, 478, *cert. denied*, 359 Md. 670 (2000), as follows: "Whether such cause of action is necessary or desirable in our democratic scheme of things . . . is a decision for the people themselves to make speaking through the properly accountable legislature representatives." Accordingly, the circuit court concluded that "it's clear as a legal proposition that we simply don't recognize social host liability," the court "would dismiss as to that aspect of it."

With respect to Count II, the violation of a statute, the court stated that the argument "caught my attention." It ultimately rejected that argument, however, stating that, in *Veytsman v. New York Palace, Inc.*, 170 Md. App. 104 (2006), this Court held that statutes imposing criminal penalties for serving alcohol to intoxicated people and minors do not create civil liability. The court further found that Steven was not a member of the class of people that CL § 10-117 was designed to protect, recognizing, however, that this finding "may be more of a sort of looking at the dots if you will a proximate cause aspect as opposed to creating the conditions . . . . I mean, it's a rather passive situation in the sense of unfortunately the decedent was a passenger not the driver."

With respect to Count III, which the court stated tracked the *in loco parentis* argument, the court stated that "the status of in loco parentis arises only when one is willing to assume . . . all the obligations, receive all the benefits associated with one standing as a

natural parent," and the court did not find that "in a social setting of a few hours."  The court explained that it might be a different situation if Steven "was going to be a weekend guest and there was communication with one set of parents and the [other] set of parents and . . . assuming other responsibilities there might be a stronger argument."  It concluded:

> But I just don't find as it's pled here that it creates a situation of in loco parentis or . . . children who show up at a normal after football game season or football or after prom type of party maybe after prom with the understanding was they're going to spend the night or something, it may be a different situation.  I just don't see it here as falling into in loco parentis, so I would dismiss on that basis also.

Finally, the court dismissed Counts IV and V, the wrongful death and the survival action, "under the same logic as the social host argument."  On September 18, 2013, based on its findings, the court issued an order dismissing the counts of Ms. Davis' First Amended Complaint seeking damages against Ms. Stapf.[2]

## STANDARD OF REVIEW

This Court has explained the standard of review of a trial court's order granting a motion to dismiss for failure to state a claim upon which relief could be granted:

> "A trial court may grant a motion to dismiss if, when assuming the truth of all well-pled facts and allegations in the complaint and any inferences that may be drawn, and viewing those facts in the light most favorable to the non-moving party, 'the allegations do not state a cause of action for which relief may be granted.'" *Latty v. St. Joseph's Soc'y of the Sacred Heart, Inc.*,

---

[2] The court ordered that Count VI of the First Amended Complaint, which alleged an uninsured motorist claim against Erie Insurance, remain open and active.  On December 18, 2013, Ms. Davis dismissed the claim against Erie Insurance.  On January 10, 2014, Ms. Davis filed her Notice of Appeal to this Court.

-10-

198 Md. App. 254, 262-63 (2011) (quoting *RRC Northeast, LLC v. BAA Md.*, Inc., 413 Md. 638, 643 (2010)). The facts set forth in the complaint must be "pleaded with sufficient specificity; bald assertions and conclusory statements by the pleader will not suffice." *RRC*, 413 Md. at 644.

"'We review the grant of a motion to dismiss de novo.'" *Unger v. Berger*, 214 Md. App. 426, 432 (2013) (quoting *Reichs Ford Road Joint Venture v. State Roads Comm'n*, 388 Md. 500, 509 (2005)). *Accord Kumar v. Dhanda*, 198 Md. App. 337, 342 (2011) ("We review the court's decision to grant the motion to dismiss for legal correctness."), *aff'd*, 426 Md. 185 (2012). We will affirm the circuit court's judgment "'on any ground adequately shown by the record, even one upon which the circuit court has not relied or one that the parties have not raised.'" *Monarc Constr., Inc. v. Aris Corp.*, 188 Md. App. 377, 385 (2009) (quoting *Pope v. Bd. of Sch. Comm'rs*, 106 Md. App. 578, 591 (1995)).

*Advance Telecom Process LLC v. DSFederal, Inc.*, ___ Md. App. ___, No. 1371, Sept. Term, 2014, slip op. at 7-8 (filed July 30, 2015).

## DISCUSSION

Ms. Davis contends that the circuit court erred in granting Ms. Stapf's motion to dismiss on the ground that Ms. Stapf owed no duty of care to Steven. She asserts that Ms. Stapf had a duty of care based on: (1) a statutory duty pursuant to CL § 10-117(b); (2) "a special relationship between the adult social host and the minor on her property"; and (3) her conduct, "which constituted an assumption of a duty of care."

Ms. Stapf contends that Maryland does not recognize a cause of action for social host liability. She asserts that the Maryland appellate courts consistently have held that a mere social host owes a lesser duty to a guest than a liquor licensee owes to a business patron, regardless of the age of the guest or patron, and accordingly, "in light of the recent decision

in *Warr v. JMGM Group, LLC*, [433 Md. 170 (2013),] it would be incongruous to hold [her] liable under a theory of social host liability."

To prevail on a negligence claim, a plaintiff must show the following elements: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Warr*, 433 Md. at 181 (quoting *Valentine v. On Target, Inc.*, 353 Md. 544, 549 (1999)). The motion to dismiss in this case focused on the first element, the duty of care.

Analysis of whether a defendant owes a plaintiff a duty is a critical first step in a negligence claim; without a legal duty, there can be no conduct that breaches a duty that causes harm. *Muthukumarana v. Montgomery County*, 370 Md. 447, 457-58 (2002) ("'[N]egligence is a breach of a duty owed to one, and absent that duty, there can be no negligence.'") (quoting *Ashburn v. Anne Arundel County*, 306 Md. 617, 627 (1986)). "Duty" has been defined as "'an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another.'" *Warr*, 433 Md. at 181 (quoting *Patton v. USA Rugby Football*, 381 Md. 627, 636-37 (2004)). The existence of a legal duty generally is a question of law for the court to decide. *Veytsman*, 170 Md. App. at 114.

Because the motion to dismiss was based on the lack of a duty, and Ms. Davis' brief focuses on the element of duty, we will begin with this element of the claim. As explained, below, however, that element is not dispositive in this case.

**I.**

**Dram Shop/Social Host Liability**

In assessing whether the circuit court erred in ruling, as a matter of law, that Ms. Davis did not assert a valid cause of action against Ms. Stapf, we begin by noting that we do not write on a clean slate. The Maryland appellate courts repeatedly have held that, under the common law, civil liability does not attach to vendors of alcoholic beverages or social hosts for the torts of inebriated patrons or guests. *See, e.g.*, *Warr*, 433 Md. at 170; *Wright*, 131 Md. App. at 470-71.

In *Wright*, 131 Md. App. at 469, Judge Charles E. Moylan, Jr., writing for this Court, discussed the evolution of the common law in this regard. In that case, 17-year-old Anthony Wright, along with 18-year-old Jason Burch, purchased alcohol from a liquor store. They then drove to the home of another friend, Bobby Foard, where they consumed the alcohol they had purchased. *Id.* Mr. Wright subsequently drove away and was killed in a crash. *Id.* Mr. Wright's parents filed suit against the defendant owners/operators of the liquor store that had sold him the alcohol, as well as against the parents of Mr. Foard. *Id.* The circuit court granted motions to dismiss in favor of all defendants. *Id.*

On appeal, this Court recounted the history of dram shop liability, beginning with *State v. Hatfield*, 197 Md. 249, 254-55 (1951).[3] In *Hatfield*, the Court of Appeals addressed whether a tavern could be liable for injuries that Frank Love, a minor to whom the tavern illegally served alcohol, caused to James Joyce.[4] In holding that the tavern could not be held liable, the Court noted that, although other jurisdictions had enacted civil damage statutes creating rights of action for injuries against those who, by selling alcohol, "caused" the intoxication of the person who caused the injury, no such statute had been enacted in Maryland. *Id*. at 254. The Court stated:

> Apart from statute, the common law knows no right of action against a seller of intoxicating liquors, as such, for 'causing' intoxication of the person whose negligent or wilful wrong has caused injury. Human beings, drunk or sober, are responsible for their own torts. The law (apart from statute) recognizes no relation of proximate cause between a sale of liquor and a tort committed by a buyer who has drunk the liquor.

---

[3] The Court of Appeals has explained the term "dram shop liability," as follows:

> The term "dram shop liability" refers to "[c]ivil liability of a commercial seller of alcoholic beverages for personal injury caused by an intoxicated customer." BLACK'S LAW DICTIONARY 568 (9th ed. 2009). "Dram shop" is an archaic term for a bar or tavern. BLACK'S LAW DICTIONARY 567. The term "dram" is an antiquated unit of fluid measurement, equivalent to one eighth of a liquid ounce, used by apothecaries; its use in the phrase "dram shop" was a result of the fact that taverns often sold hard alcohol by the dram.

*Warr v. JMGM Group, LLC*, 433 Md. 170, 173 n.1 (2013).

[4] Md. Code (1951) Art. 2B § 114 provided at the time that it was a misdemeanor to sell alcohol to a person under 21 years of age or to a person visibly under the influence of an alcoholic beverage. This provision currently is codified in Md. Code (2011 Repl. Vol.) Art. 2B § 12-108(a)(1).

> . . . "Under the common law it is not an actionable wrong either to sell or to give intoxicating liquors to an able-bodied man."

*Id.* at 254-55. The Court held that the tavern was not responsible for the actions of the intoxicated patron because "'[t]he common law rule holds the man who drank the liquor liable and considers the act of selling it as too remote to be a proximate cause of an injury caused by the negligent act of the purchaser of the drink.'" *Id.* at 255 (quoting *Seibel v. Leach*, 288 N.W. 774, 775 (Wis. 1939)).

In *Wright*, Judge Moylan noted that there had been several attempts to change this law, but the Court of Appeals had declined to do so, stating that the determination whether to impose civil liability on vendors of alcoholic beverages for the torts of drunk patrons "*clearly impacts on the development of the law relating to the dispensing and consumption of alcoholic beverages, a subject long pervasively regulated by the legislature.*" *Id.* at 473 (quoting *Felder v. Butler*, 292 Md. 174, 183-84 (1981)). If such a change should be made, it should be done by the General Assembly. *Wright*, 131 Md. App. at 473. *Accord Warr*, 433 Md. at 252. After reviewing this history regarding dram shop liability, we held that Mr. Wright's parents could not maintain an action against the liquor store. *Wright*, 131 Md. App. at 476.

The Court next turned to the action against Mr. Foard's parents for negligently permitting the deceased to consume alcohol at their residence. *Id.* at 477. We stated that this Court's prior decision in *Hebb v. Walker*, 73 Md. App. 655, *cert. denied*, 312 Md. 601 (1988), was controlling.

-15-

In *Hebb*, the Court addressed the liability of a 17-year-old social host and his parents. The 17-year-old boy, while his parents were out-of-town, had a party, with nearly 400 persons, and one of the uninvited, intoxicated guests, 16-year-old Holly Walker, flipped her car, killing the passenger, David Hebb. 73 Md. App. at 657-58. Characterizing the case as "yet another attempt to import into Maryland a form of Dram Shop liability," the Court stated that it would be "illogical to hold a minor party host liable for injuries caused to a third person by an intoxicated individual who was an interloper at the party" when a liquor licensee would not be civilly liable. *Id*. at 658-59. The Court stated: "Surely a liquor licensee must owe a business patron a higher duty of care than does a social host to a guest. Yet, the liquor licensee, as we have seen, is not liable for the motor torts of his intoxicated patrons." *Id*. at 659.

The Court in *Hebb* rejected the argument that the violation of Md. Code, Art. 27 § 400A, which made it unlawful for a person under 21 years of age to possess an alcoholic beverage, created civil liability. It noted that breach of a statutory duty is considered evidence of negligence only if the following three requirements are met: (1) the plaintiff was "'a member of the class of persons the statute was designed to protect'"; (2) the "'injury suffered must be of the type the statute was designed to prevent'"; and (3) the plaintiff presents "'legally sufficient evidence to demonstrate that the statutory violation was the proximate cause of the injury sustained.'" *Id.* at 660 (quoting *Pahanish v. Western Trails,*

-16-

*Inc.*, 69 Md. App. 342, 362 (1986)). The Court held that appellants failed this test for two reasons:

> 1) Md. Ann. Code art. 27, § 400, et seq., was designed to protect minors against the consumption of alcohol. The evidence was that Holly Walker consumed alcohol at the home of the decedent. The alcohol she drank at Johnson's was taken by her into the party; 2) Even if Johnson served or provided alcohol to Ms. Walker, that factor was not the direct cause of the death of [David] Hebb.

*Id.* at 661. The Court concluded by stating that, if social host liability were to be a valid cause of action, it must be enacted by the legislature.

In *Walker*, 131 Md. App. at 478, this Court stated that the message in *Hebb* was clear: "Maryland does not recognize a cause of action for social host liability." The Court concluded: "Whether such a cause of action is necessary or desirable is, in our democratic scheme of things, a decision for the people themselves to make, speaking through their properly accountable legislative representatives." *Id.* at 478.

More recently, in *Warr*, the Court of Appeals revisited the issue whether a tavern owner could be held liable for the actions of an intoxicated patron. In a four to three opinion, the majority of the Court declined to recognize a cause of action against a commercial vendor who sells alcohol to another person. 433 Md. at 199. The analysis in the majority opinion, however, focused on the duty element of a cause of action for negligence, as opposed to the element of proximate cause.

In *Warr*, a patron of Dogfish Head Alehouse (the "tavern") consumed at least 17 drinks and then drove away and struck Mr. Warr's vehicle, resulting in injuries to Mr. Warr

and one of his daughters and the death of his second daughter. *Id.* at 173-74. Mr. and Mrs. Warr sued the tavern, alleging that it "had breached its duty to 'not furnish alcohol to intoxicated persons,' which caused their injuries." *Id.* at 174. The Court declined to impose dram shop liability on the tavern "in the absence of any duty owed by the tavern to the Warrs." *Id*. at 177.

The Court began by noting the general rule that "'there is no duty to control a third person's conduct so as to prevent personal harm to another, unless a special relationship exists either between the actor and the third person or between the actor and the person injured.'" *Id*. at 183 (quoting *Remsburg v. Montgomery*, 376 Md. 568, 583 (2003)). It adhered to the principle that "[h]uman beings, drunk or sober, are responsible for their own torts," *id*. at 190 (quoting *Hatfield*, 197 Md. at 254), and it held that a tavern owner does not have a duty of care to members of the general public for harm caused by a patron, absent a "special relationship." *Id*. at 183-195. Because the Warrs did not "allege a special relationship between themselves and the owners" of the tavern, the tavern "did not owe a duty to the Warrs, as members of the general public." *Id.* at 195, 199.

The Court of Appeals then discussed the Warrs' argument that, "because there is a criminal statute prohibiting the sale of alcohol to visibly intoxicated persons," "the tavern owners owed a duty to refuse to serve an intoxicated patron."[5] *Id.* at 195. In rejecting that

---

[5] Maryland Code (2011 Repl. Vol.) Art. 2B § 12-108(a)(1) states that a licensed vendor of alcohol may not sell alcohol: "(i) To a person under 21 years of age for the

(continued...)

argument, the Court stated that, historically, it had "not extrapolated civil liability from criminal statutes regulating the sale of alcohol," noting that, in *Felder*, 292 Md. at 183-84, the Court had rejected the argument that the existence of this criminal statute was sufficient to establish civil liability because the legislature "had not enacted laws to impose civil liability." *Id*. at 197-98. The Court explained that, to impose civil liability on the basis of a criminal statute, a party must show "'(a) the violation of a statute or ordinance designed to protect a specific class of persons which includes the plaintiff, and (b) that the violation proximately caused the injury complained of.'" *Id.* at 198 (quoting *Brooks*, 378 Md. at 79). The Court stated that the criminal statute relied on by the Warrs was not designed to protect a specific class if persons. It explained:

> The statutes regulating the sale of alcohol and prohibiting its provision to those visibly intoxicated were enacted "for the protection, health, welfare and safety of the people of this State." Maryland Code (1957, 2011 Repl.Vol.), Article 2B, Section 1-101(a)(3). Our jurisprudence establishes that this general class of individuals is not sufficient to create a tort duty because, "we have always required the statute or ordinance allegedly violated to set forth mandatory acts that are clearly for the protection of a particular class of persons and *not* merely for the public as a whole." . . . Thus, the existence of criminal statutes prohibiting the sale of alcohol to intoxicated individuals is not sufficient to support liability in the instant case, because the statute does not identify a particular class of protectees.

*Id.* at 198-99 (quoting *Weitzke v. Chesapeake Conference Ass'n*, 421 Md. 355, 388 (2011)).

---

[5](...continued)
underage person's own use or for the use of any other person; or (ii) To any person who, at the time of the sale, or delivery, is visibly under the influence of any alcoholic beverage."

-19-

Accordingly, the Court held that the tavern "did not owe a duty to the Warrs, as members of the general public." *Id.* at 199. The Court further stated that it agreed with the words of the Supreme Court of Delaware that "the determination of whether to impose liability on tavern owners for injuries caused by intoxicated patrons involves significant public policy considerations and is best left to the General Assembly." *Id.* at 199 (quoting *Shea v. Matassa*, 918 A.2d 1090, 1094 (Del. 2007)).[6]

## II.

### Ms. Davis' Contentions

Ms. Davis acknowledges the above precedent, and she does not argue that Ms. Stapf had a duty to Steven under a theory of common law social host liability.[7] She contends, however, that Ms. Stapf had a statutory duty to Steven pursuant to CL § 10-117(b), which "arises separate and apart from the common law" governing social host liability. She also asserts that "social hosts that furnish and facilitate the illegal consumption of alcohol by

---

[6] Judge Sally Adkins authored a dissent, in which Judges Harrell and McDonald joined. With respect to the issue whether the tavern owed a duty of care to the Warrs, the dissent stated that the "special relationship" doctrine "comes into play only when the actor's conduct is passive," *Warr*, 433 Md. at 209, and because the Warrs alleged that the tavern, a commercial vendor, actively created a risk of harm in serving a visibly intoxicated patron, the Warrs stated a claim that the tavern had a duty of reasonable care. *Id.* at 220-237. The dissent further indicated a willingness to overrule the precedent from *State v. Hatfield*, 197 Md. 249 (1951), and *Felder v. Butler*, 292 Md. 174 (1981) that, as a matter of law, providing alcohol is not the proximate cause of injury occurring as a result of the intoxication of the person served. *Warr*, 433 Md. at 237-253.

[7] Ms. Davis does not contest, therefore, the circuit court's dismissal of Count I, which alleged negligence under the theory of common law social host liability.

minors owe a duty based on a special relationship to these minors." Finally, she contends that Ms. Stapf assumed a duty of care to prevent harm from occurring to Steven, stating that Ms. "Stapf's affirmative acts of permitting the party to occur in her house and by permitting minors to consume massive amounts of alcohol triggered a duty of reasonable care." We turn to address these arguments.

## A.

### Statutory Duty

Ms. Davis argues that the general rule against social host liability is not applicable here because, even in the absence of a common law duty, a statute may impose a duty of care on a defendant. This principle, often referred to as "the Statute or Ordinance Rule," provides that, "where there is an applicable statutory scheme designed to protect a class of persons which includes the plaintiff," the "defendant's duty ordinarily 'is prescribed by the statute' or ordinance," and "violation of the statute or ordinance is itself evidence of negligence." *Blackburn Ltd. P'ship v. Paul*, 438 Md. 100, 111 (2014) (quoting *Brooks v. Lewin Realty III, Inc.*, 378 Md. 70, 78 (2003)). For civil liability to be imposed on the basis of a statute, a party must show the following:

> (a) the violation of a statute or ordinance designed to protect a specific class of persons which includes the plaintiff, and (b) that the violation proximately caused the injury complained of. "Proximate cause is established by determining whether the plaintiff is within the class of persons sought to be protected, and the harm suffered is of a kind which the drafters intended the statute to prevent. * * * It is the existence of this cause and effect relationship that makes the violation of a statute *prima facie* evidence of negligence."

*Id.* at 112 (quoting *Brooks*, 378 Md. at 79).  *Accord Warr*, 433 Md. at 198.

## 1.

### Protection of a Particular Class of Persons

In *Blackburn*, 438 Md. at 125, the Court made clear that "the Statute or Ordinance Rule" is limited; it applies only when the statute is designed to protect a particular class of persons and "not merely the public at large."  In that case, three-year-old Christopher suffered a severe brain injury after he nearly drowned in an apartment complex pool.  *Id.* at 104.  Christopher's mother filed suit against the owner of the apartment complex, and others, who argued that they were entitled to summary judgment because, *inter alia*, Christopher was a trespasser, and therefore, they owed only a limited duty to him.  *Id*. at 105-06.  The Court addressed whether, in addition to the limited duty imposed by the common law, petitioners had a duty pursuant to regulations set forth in the Code of Maryland Regulations ("COMAR") regarding pool barriers.  *Id.* at 118-22.

The Court first looked to see who the regulations were enacted to protect.  It concluded that they were enacted to protect the health and safety of individuals at pools, and in particular, the regulations identified a particular class to be protected, i.e., children under the age of five.  *Id.* at 125.  Because Christopher was three years old at the time of the accident, he was a member of the protected class.  *Id.* at 126.  Accordingly, pursuant to the Statute or Ordinance Rule, because Christopher was a member of the class of persons identified in the regulations, and he allegedly sustained injuries that the statute was intended

to prevent, a reasonable trier of fact could find that the alleged violation of the COMAR requirements showed a breach of a duty that petitioners owed Christopher. *Id.* The Court held that the "the common-law rule that a landowner owes a limited duty to trespassers was trumped by the Statute or Ordinance Rule." *Id*. at 115.

In *Warr*, 433 Md. at 198-99, as indicated, the Court similarly noted that a criminal statute will create a tort duty only if it is enacted for the protection of a particular class of persons. In that case, the Court held that Art. 2B § 12-108(a)(1), preventing the sale of alcohol to visibly intoxicated persons, did not satisfy this requirement because the statute was enacted for the protection of "the people of this State," a general class of individuals.

With that background in mind, we assess Ms. Davis' argument that the Statute or Ordinance Rule applies here. CL § 10-117 provides as follows:

(a) *Furnishing alcohol.* — Except as provided in subsection (c) of this section, a person may not furnish an alcoholic beverage to an individual if:
(1) the person furnishing the alcoholic beverage knows that the individual is under the age of 21 years; and
(2) the alcoholic beverage is furnished for the purpose of consumption by the individual under the age of 21 years.
(b) *Allowing possession or consumption of alcohol.* — Except as provided in subsection (c) of this section, an adult may not knowingly and willfully allow an individual under the age of 21 years actually to possess or consume an alcoholic beverage at a residence, or within the curtilage of a residence that the adult owns or leases and in which the adult resides.
(c) *Exceptions.* — (1) The prohibition set forth in subsection (a) of this section does not apply if the person furnishing the alcoholic beverage and the individual to whom the alcoholic beverage is furnished:
(i) are members of the same immediate family, and the alcoholic beverage is furnished and consumed in a private residence or within the curtilage of the residence; or
(ii) are participants in a religious ceremony.

-23-

(2) The prohibition set forth in subsection (b) of this section does not apply if the adult allowing the possession or consumption of the alcoholic beverage and the individual under the age of 21 years who possesses or consumes the alcoholic beverage:

(i) are members of the same immediate family, and the alcoholic beverage is possessed and consumed in a private residence, or within the curtilage of the residence, of the adult; or

(ii) are participants in a religious ceremony.

An adult who violates CL § 10-117 "is guilty of a misdemeanor and on conviction is subject to: (1) a fine not exceeding $2,500 for a first offense; or (2) a fine not exceeding $5,000 for a second or subsequent offense." CL § 10-121(b).[8]

Ms. Davis argues that CL § 10-117(b) meets the first requirement of the Statute or Ordinance Rule because it was "'designed to protect a specific class of persons which includes the plaintiff.'" *Blackburn*, 438 Md. at 116 (quoting *Warr*, 433 Md. at 198). In support she states:

The legislative histories leave no doubt about the purpose of this enactment: to protect minors from being served alcohol at homes other than their own. Its enactment was motivated by the prevalence of house parties where adult parents permitted minors to come into their homes and drink alcohol, often resulting in serious injury or death.

_____

[8] In 1988, the legislature enacted subsection (a) of what is now CL § 10-117, prohibiting a person from furnishing alcohol to persons under the legal drinking age. 1988 Md. Laws ch. 403, 3120. The purpose of this statute was to close a loophole in the law where licensed sellers of alcoholic beverages were guilty of a misdemeanor for selling to a person under 21, but a person could purchase the liquor for the under-21 person and not be held accountable. See Senate Judicial Proceedings Committee Floor Report, 1988 Leg. 410th Sess. (Md. 1988). In 1996, what is currently subsection (b) of CL § 10-117 was enacted, prohibiting an adult from knowingly allowing a person under 21 years of age to possess or consume an alcoholic beverage in the residence in which the adult resides. 1996 Md. Laws ch. 441, 2748.

Ms. Davis asserts that 17-year-old Steven was within the class of protectees, i.e., individuals under 21 years of age at the home of a unrelated adult.

Ms. Stapf disagrees. She contends that "CL § 10-117(b) was not enacted to protect a specific class of persons, but instead to promote the general welfare of the people of Maryland and accordingly, civil liability may not be imposed on the basis of a violation of this statute." She argues that "statutes regulating the provision of alcohol to minors or intoxicated individuals are meant to protect the public as a whole from the various dangers associated with alcohol consumption by irresponsible individuals." She cites *Warr*, 443 Md. at 198-99, for the proposition that, "[w]here a statute is enacted for the benefit of the general public, Maryland precedent dictates that violation of the statute cannot be used to establish civil liability."

In assessing the legislative intent and purpose in enacting CL § 10-117(b), we look first to the language of the statute. *See Mummert v. Alizadeh*, 435 Md. 207, 213 (2013) ("To ascertain the intent of the General Assembly, we begin with the normal, plain meaning of the language of the statute."). Here, the plain language of the statute suggests that the purpose of CL § 10-117(b) was to protect persons under the age of 21, who are deemed to be too immature to appreciate the consequences of drinking. *See Congini v. Portersville Valve Co.*, 470 A.2d 515, 517 (Pa. 1983) (legislature has deemed persons under 21 to be "incompetent to handle the affects of alcohol").

Because the language, however, is not clear and unambiguous regarding the purpose of enacting CL § 10-117(b), we look to the legislative history. *See Allstate Lien & Recovery Corp. v. Stansbury*, 219 Md. App. 575, 585 (2014), *cert. granted*, 441 Md. 217 (2015). A review of this legislative history reveals that the statute was designed to protect a specific class of persons, i.e., persons under the age of 21 who knowingly are permitted to drink at the home of an unrelated adult for nonreligious purposes.

The bill file for HB 267 reflects that the 1996 enactment of CL § 10-117(b) was related to the tragic death of 15-year-old Tiffany Fouts, who, after drinking and becoming semiconscious, was raped and ultimately died.[9] Gail H. Ewing, President of the Montgomery County Council, submitted a letter in support of HB 267, stating that "[t]he tragic story involving Tiffany Fouts, who was drunk, raped and left outside to die, shows the

---

[9] The Court of Appeals summarized the facts surrounding her death in a subsequent civil case involving the response of the 911 operations center. It stated that, on November 11, 1995, Tiffany Fouts and a friend went to Eric F.'s house, where three other boys were present, along with Eric's mother, Ms. Tresa F. *Muthukumarana v. Montgomery County*, 370 Md. 447, 457-58 (2002). This Court explained:

> Shortly after Tiffany and Melanie arrived, "alcoholic beverages were made available and consumed by all of" the minors at the home. Within one hour, Tiffany began to vomit and "became semiconscious." At that time, "certain guests engaged in nonconsensual sexual acts with Tiffany," dropped "heavy objects" on her head, and "urinated upon her." In an effort to conceal Tiffany's condition, Eric F. and Donte W. dragged her outside of the home through the basement. They "left Tiffany, wearing only a tee shirt, skirt, socks, and shoes, in an area of woods located directly behind the townhome."

*Id.*

consequences of adults who ignore underage drinking in their homes.  By making adults legally responsible for allowing minors to possess or consume alcohol, this bill serves as a deterrent to underage drinking." Letter from Gail H. Ewing, President, Montgomery County Council, to Hon. Joseph F. Vallario, Jr., Chairman, House Judiciary Comm. (Feb 14, 1996) (on file Legislative Services Bill File HB 267 (Md. 1996)).  The bill file also refers to a Baltimore Sun newspaper article titled "Teen's death provides impetus for drinking bill." Sherrie Ruhl, *Teen's death provides impetus for drinking bill*, BALT. SUN, Jan. 7, 1996, at 3B (http://perma.cc/U4MD-CH43).  Moreover, a letter from the American Academy of Pediatrics supporting the bill noted that underage drinking endangered teens.  Letter from Melvin Stern, MD, Chair, Legislative Committee of the Maryland Chap. of the American Academy of Pediatrics to Hon. Joseph F. Vallario, Jr., Chairman, House Judiciary Comm. (Jan. 30, 1996) (on file Legislative Services Bill File HB 267 (Md. 1996)).  A more general concern with protecting young people is reflected in a letter from the Maryland Underage Drinking Prevention Coalition, which stated: "Coalition members feel strongly that this bill will serve a great purpose by reducing the number of adult sanctioned underage drinking parties and the resulting often deadly consequences to our young people."  Letter from Bonnie M. Holmes, Exec. Dir. of the Maryland Underage Drinking Prevention Coalition to Hon. Joseph F. Vallario, Jr., Chairman, House Judiciary Comm. (Feb. 7, 1996) (on file Legislative Services Bill File HB 267 (Md. 1996)).

Based on this legislative history, we conclude that the impetus for CL § 10-117(b) was to protect young people under the age of 21, who are deemed to be too immature to appreciate the consequences of drinking, from the dangers relating to drinking. The legislators sought to do this by discouraging adults from knowingly allowing other people's children to drink alcohol in their homes. As such, CL § 10-117 was designed to protect a specific class of persons, i.e., persons under the age of 21 who knowingly are permitted to drink at the home of an unrelated adult for nonreligious purposes.

CL § 10-117 is significantly more limited than the statutes involved in *Hatfield* and *Warr*, which regulated the sale of alcohol by commercial vendors and were enacted for the purpose of protecting the "people of the State." Md. Code (2011 Repl. Vol.) Art. 2B, § 1-101(a); *Warr*, 433 Md. at 198. Because CL § 10-117 was designed to protect a specific class of persons, and Steven was a member of this protected class, the first prong of the Statute and Ordinance Rule is satisfied.

The District Court of Appeal of Florida applied a similar analysis in *Newsome v. Haffner*, 710 So.2d 184 (Fla. Dist. Ct. App. 1998). In that case, the estate of a minor injured by a self-inflicted gunshot wound brought a civil suit against a residential social host. The circuit court dismissed the complaint, ruling that it failed to state a cause of action. The appellate court reversed, holding that a claim for negligence was properly made based upon a violation of the "open house party" statute. This statute made it a crime for an adult having control of a residence to

-28-

"allow an open house party to take place at said residence if any alcoholic beverage or drug is possessed or consumed at said residence by any minor where the adult knows that an alcoholic beverage or drug is in the possession of or being consumed by a minor at said residence and where the adult fails to take reasonable steps to prevent the possession or consumption of the alcoholic beverage or drug."

*Id.* at 185 (quoting Fla. Stat. § 856.15 (1997)).

The court stated that this statute was "clearly designed to protect minors from the harm that could result from the consumption of alcohol or drugs by those who are too immature to appreciate the potential consequences." *Id.* It held that, by enacting the statute, "the legislature has therefore imposed a duty of care on social hosts and created a civil cause of action for a statutory violation." *Id.* at 186.

Other courts similarly have held that a statute prohibiting furnishing alcoholic beverages to a person under 21 years of age was meant to protect a specific class of persons "against a particular hazard, i.e., the dangerous effects of intoxication of those" under 21. *See, e.g.*, *Longstreth v. Gensel*, 377 N.W.2d 804, 812-13 (Mich. 1985). *Accord Hanson v. Friend*, 824 P.2d 483, 456 (Wash. 1992) (statute prohibiting furnishing liquor to any person under 21 years of age, which protects a minor's health and safety interest from the minor's own inability to drink responsibly, imposes a duty of care on social hosts not to serve liquor to minors).

Having found that the first prong of the Statute or Ordinance Rule was satisfied, we turn to the second prong of the rule, i.e., that the harm suffered by Steven is the kind that the General Assembly intended the statute to prevent.

## 2.

## Proximate Cause

The second prong of the Statute or Ordinance Rule requires a showing that the violation of the statute was the proximate cause of the injury. As the Court of Appeals has explained:

> "Proximate cause is established by determining whether the plaintiff is within the class of persons sought to be protected, and the harm suffered is of a kind which the drafters intended the statute to prevent * * * It is the existence of this cause and effect relationship that makes the violation of a statute prima facie evidence of negligence."

*Blackburn*, 438 Md. at 126 (quoting *Brooks*, 378 Md. at 79). As explained below, we conclude that the harm suffered here is the kind that the drafters intended to prevent.

As indicated, the legislative history shows that the purpose of the statute was to protect minors, who are too immature to handle the affects of alcohol, from danger and risky behavior associated with intoxication. Here, Steven's intoxication exposed him to danger that, tragically, was fatal. The harm to Steven, which is alleged to have resulted from Steven's impaired judgment due to intoxication, was the kind that the drafters intended to prevent. As Ms. Davis states in her brief, Steven's intoxication placed him in a position of unreasonable peril:

> Steven was prevented from making an intelligent and informed decision about leaving the party that night. Indeed, had Steven not been intoxicated, he would not have ridden in a truck with a driver that was so intoxicated he could barely stand. He certainly would not have climbed into the back of a pickup truck, fallen asleep, and allowed an intoxicated driver to later drive the truck away

-30-

at a high rate of speed while he lay unprotected in the rear of the truck, a position of great peril.

Given our conclusion that Steven was a member of a particular class of persons sought to be protected, the harm suffered was the kind that the drafters of the statute intended to prevent, and that Ms. Davis alleged that Ms. Stapf knew that Steven and other unrelated minors were drinking at her home for non-religious reasons, we concluded that Ms. Davis properly alleged that Ms. Stapf had a duty under CL § 10-117(b) to exercise reasonable care to stop the underage drinking and protect those minors. We make clear, however, that a duty pursuant to CL § 10-117(b) will be found only when an adult *knowingly and willfully* allows an unrelated individual under the age of 21 to drink alcohol at his or her residence. The Statute or Ordinance Rule does not apply to impose a duty on an adult when persons under 21 drink alcohol in a residence without the adult's knowledge.

Ordinarily, based on this analysis, we would find that Ms. Davis has set forth a prima facie case of negligence sufficient to prevail against a motion to dismiss and it was for the trier of fact to determine: (1) if Ms. Stapf violated the duty imposed by statute; and (2) if so, whether the violation was a proximate cause of Steven's injuries. *See Pittway Corp. v. Collins*, 409 Md. 218, 253 (2009) ("It is well established that, 'unless the facts admit of but one inference . . . the determination of proximate cause . . . is for the jury.'") (quoting *Caroline v. Reicher*, 269 Md. 125, 133 (1973)); *Macleary v. Hines*, 817 F.2d 1081, 1084-85 (3d Cir. 1987) (whether social host's conduct was cause of injury, where minor alleged that his impaired condition caused him to create an unreasonable risk of harm to himself by

accepting a ride with a person so obviously intoxicated that a reasonable person would not have accepted a ride, was a question for the jury). This Court has made clear, however, that the principle that a violation of a statute is evidence of negligence is a rule of evidence, not the creation of a substantive cause of action. *Joseph v. Bozzuto Mgmt. Co.*, 173 Md. App. 305, 325 (2007). Because the Court of Appeals has held that there is no cause of action for social host liability, we cannot conclude that Ms. Davis has stated a cause of action.

The Court of Appeals has held, as a matter of law, that "the man who drank the liquor is liable" and the act of providing it is "too remote to be a proximate cause of an injury." *Hatfield*, 197 Md. at 255. *Accord Warr*, 433 Md. at 202-03 (Adkins, J., dissenting) (common law precluding dram shop liability "'was predicated on the theory that the drinking rather than the serving of alcohol was the proximate cause of intoxication,'" and "'the chain of legal causation between the negligent serving of an alcoholic beverage and the injury was severed by the customer's voluntary act in drinking the alcohol.'") (quoting FRANK A. SLOAN ET AL., DRINKERS, DRIVERS, AND BARTENDERS: BALANCING PRIVATE CHOICES AND PUBLIC ACCOUNTABILITY 118 (2000)); *Hebb*, 73 Md. App. at 661 (providing alcohol to minor driver

not direct cause of death of passenger).[10] Pursuant to this precedent, Ms. Davis, as a matter of law, has not shown the element of proximate cause to support her negligence claim.

One could argue that this precedent, holding that, when dealing with an "ordinary able bodied [person], it is the consumption of alcohol rather than the furnishing thereof, that is the proximate cause of any subsequent damage" is distinguishable when dealing with persons under the age of 21. Given that the General Assembly has determined these persons to be "incompetent to handle the affects of alcohol," *Congini*, 470 A.2d at 517, it could be argued that persons under 21 do not qualify as "ordinary able bodied" persons. This Court is not able to make that distinction in this case, however, given that the person served the alcohol in *Hatfield* was a minor. To the extent such a distinction should be made, it must be made by the Court of Appeals or the General Assembly.

Accordingly, although this Court holds that CL § 10-117(b) imposed a duty on Ms. Stapf, and the complaint sufficiently alleged a violation of this duty, given the Court of

---

[10] In *Hatfield*, the tort was committed by the intoxicated patron of the tavern. That Mr. Erdman was the driver here, as opposed to Steven, is not significant to the analysis. As the Supreme Court of Delaware has explained:

> Using similar reasoning (that is, consumption of the alcohol and not the sale thereof is the proximate cause of any resulting injuries), a majority of jurisdictions has determined that a patron who is injured as a result of his voluntary intoxication does not have a cause of action against the tavern operator at common law.

*Wright v. Moffitt*, 437 A.2d 554, 555 (Del. 1981). *Accord Miller v. Gastronomy, Inc.*, 110 P.3d 144, 147 (Utah Ct. App. 2005).

Appeals precedent regarding the issue of proximate cause, we cannot say that Ms. Davis stated a cause of action based on CL § 117(b). The circuit court properly dismissed Count II, alleging negligence based on the violation of a statutory duty.

**B.**

**Special Relationship**

Ms. Davis next argues that Ms. Stapf had a duty of care to Steven based on a "special relationship" she established when she hosted a party at her residence and permitted minors and underage individuals to consume alcohol. She asserts that this duty required Ms. Stapf "to exercise reasonable care to protect Steven and the other minors in her residence from harm," including "contacting [Ms. Davis] or the other parents of the children at the Stapf house that night." Ms. Stapf contends that Ms. Davis failed to preserve her claim that there was a "special relationship" because Ms. Davis' argument in the circuit court was based on the doctrine of *in loco parentis*.

To be sure, the focus of the complaint was that Ms. Stapf "owed a special duty" because she "stood in an in loco parentis relationship with Steven." At the hearing on the motion to dismiss, however, counsel for Ms. Davis expounded on the argument, stating that there was a "special relationship," which "[w]e've characterized . . . as in loco parentis relationship, which is one recognized under Maryland law." Counsel cited *Biscan*, 160 S.W.3d at 462, which addresses whether an adult allowing a minor to drink alcohol has a duty to the minor based on a special relationship, and he argued that the facts in this case

"establish[] a special relationship." The issue of a duty based on a special relationship was sufficiently preserved our review.

The general rule is that a person "'is under no special duty to protect another from . . . acts by a third person, in the absence of statutes, or a special relationship.'" *Pace v. State*, 425 Md. 145, 156 (2012) (quoting *Horridge v. St. Mary's County Dep't of Soc. Servs.*, 382 Md. 170, 183 (2004)). "[T]he creation of a 'special duty' by virtue of a 'special relationship' can be "established by either (1) the inherent nature of the relationship between the parties; or (2) by one party undertaking to protect or assist the other party, and thus often inducing reliance upon the conduct of the acting party." *Patton v. United States of America Rugby Football*, 381 Md. 627, 639 (2004) (quoting *Remsburg*, 376 Md. at 589-90). With respect to the first prong, the inherent nature of the relationship, a "special relationship" that can give rise to liability for actions of a third party includes: (1) a special relationship between the actor and the third person, "which imposes a duty upon the actor to control the third person's conduct"; or (2) a special relationship between the actor and the person injured, which creates a duty on the actor to protect the third party. *Pendleton v. State*, 398 Md. 447, 473 (2007) (quoting *Lamb v. Hopkins*, 303 Md. 236, 242 (1985)).

Here, Ms. Davis does not assert that Ms. Stapf had a special relationship with Steven. Rather, she asserts that Ms. Stapf had a duty of care to Steven based on her special relationship with him. She asserts that "[a]n adult social host that serve[s], permits, or facilitates the illegal consumption of alcohol on the adult's property creates a special

-35-

relationship to the minors who come onto the property, and the adult property owner owes these minors a duty of care."

In support of her argument that Ms. Stapf had a special relationship with Steven that imposed a duty on her to protect Steven, Ms. Davis cites cases in other jurisdictions that have held that an adult social host had a duty of care to minors who were permitted to drink illegally on their property based on a special relationship between the social host and the minor. For example, in *Biscan*, 160 S.W.3d at 466-67, 16-year-old Jennifer Biscan was injured in a single-car automobile accident after leaving a party hosted by an adult, Paul Worley, at Worley's home. *Id.* In finding that Worley had a special duty to protect minors at the party the Supreme Court of Tennessee stated that, "because of their immaturity and inexperience, a duty may exist towards minors where it might not exist towards adults." *Id.* at 480.

The court evaluated several factors – public policy, foreseeability, and means and ability to control the third party – in determining whether Worley had a sufficient relationship to his minor guests, including Biscan, such that he owed her a duty. *Id.* With respect to public policy, the court found that, because minors generally are prohibited from consuming alcohol, and public policy considerations favor imposing a duty to act for the protection of minors where such a duty might be absent when dealing with adults, that factor weighed in favor of finding a special relationship. *Id.* at 480-81. With respect to foreseeability, the court concluded that, because it was foreseeable that guests would drink and drive, it also was

-36-

foreseeable that guests would ride with drivers who had been drinking; thus, that factor weighed in favor of finding a special relationship. *Id.* at 481. With respect to means and ability to control the third party, the court concluded that, Worley, an adult host who was "in charge" of a party held for minors, "certainly has some ability to control the conduct of his guests," which may have included preventing access to their cars or contacting the parents of intoxicated guests. *Id*. at 481-82. Concluding that these factors supported a finding of a special relationship, the court held that, because Worley "knowingly permitted and facilitated the consumption of alcohol by minors, an illegal act, Worley had a duty to exercise reasonable care to prevent his guests from harming third persons or from befalling harm themselves." *Id.* at 482. *Accord Martin v. Marciano*, 871 A.2d 911, 915 (R.I. 2005) ("As a party host who is alleged to have made alcohol illegally available to underage guests, defendant owed plaintiff 'the duty of exercising reasonable care to protect [him] from harm and criminal attack at the hands of fellow [guests] or other third persons.'") (quoting 2 STUART M. SPEISER ET AL., THE AMERICAN LAW OF TORTS § 9:20, at 1125 (1985)) (footnote omitted).

The argument presented here, that an adult who knowingly allows an unrelated person under 21 to drink alcohol in his or her home assumes a special relationship with that person that imposes a duty of care, is an intriguing one. We need not, however, resolve the issue because, similar to the previous argument, even if there was a duty, the Court of Appeals has held, as a matter of law, that the drinking is the proximate cause of any subsequent injury,

not the furnishing (or allowing consumption) of the alcohol.  Accordingly, the circuit court properly dismissed Count III, asserting that Ms. Stapf assumed a duty of care based on a special relationship, which Ms. Davis characterized as an *in loco parentis* argument.

## C.

### Assumption Of Duty

Ms. Davis' final argument is that Ms. Stapf owed Steven a duty of care because she "assumed a duty to protect the minors in her care when she knowingly permitted minors and underage individuals, including Steven, to enter her property and consume large amounts of alcohol in her garage."  In support of her argument, Ms. Davis again cites *Biscan* for the proposition that, by her affirmative actions of permitting the party to occur in her house and permitting minors to consume "massive amounts of alcohol," a duty of reasonable care was "triggered."  Moreover, because Ms. Stapf "specifically exercised control over the consumption of alcohol and who was permitted to be on her property," she owed "these minors a duty of care."

Ms. Stapf does not dispute the general proposition that, when a person acts for the benefit of another, he must act carefully.  She contends, however, that Ms. Stapf's acquiescence to underage drinking was not an act by which she "assumed a duty of care, and to hold otherwise would abrogate the common law rule that Maryland does not recognize social host liability."

Although there generally is no duty to act for the benefit of another person, generally "when one does indeed act for the benefit of another, he [or she] must act in a reasonable manner." *Muthukumarana*, 370 Md. at 487. A duty to act reasonably, however, is conditioned upon an affirmative act being taken. *Id.* at 499. For example, where a tavern owner places an unconscious patron in a sleigh and starts the horses, he has undertaken a duty to the injured third party by actually placing the patron in the transport and starting it home. *Warr*, 433 Md. 182.

Here, Ms. Stapf did not affirmatively act to protect Steven from death. Rather, she acquiesced to underage persons drinking alcohol at her home. That acquiescence does not equate to the assumption of duty. For this reason, as well as the lack of proximate cause, as previously discussed, Ms. Davis states no cause of action against Ms. Stapf on this ground.

## III.

## Conclusion

Precedent precludes a conclusion that Ms. Davis stated a cause of action against Ms. Stapf for negligence. The circuit court properly granted Ms. Stapf's motion to dismiss the complaint.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLEES.**

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2533

September Term, 2013

_____

NANCY DAVIS, ET AL.

v.

LINDA STAPF, ET AL.

_____

Krauser, C.J.,
Graeff,
Nazarian,

JJ.

_____

Concurring Opinion by Nazarian, J.
_____

Filed: August 26, 2015

I join the Court's opinion, and write solely to express a slightly different view about where this opinion leaves the state of the law going forward. In my view, and in a break with the majority's, *see* slip op. at 33 n.10, the fact that Mr. Erdman was the driver *is* significant to the analysis of this case because *that* is the fact that breaks the proximate-causal chain. Our holding here, and the source of the duty we have identified, distinguishes this situation from the typical dram shop or social host case in a way that could matter in another case with slightly different facts.

In the dram shop and social host liability cases the majority correctly discusses, the analytical path between a duty and the injury at issue is interrupted by an intervening decision, almost always the drinker's decision to drive. In *Warr v. JMGM Group, LLC*, 433 Md. 170 (2013), to cite only the most recent example, the Court of Appeals "decline[d] to impose dram shop liability on Dogfish Head [Alehouse] in the absence of any duty owed to the Warrs," the survivors of the driver the Alehouse's customer hit and killed on his way home. *Id*. at 177. The Court held–reiterated, really–that "[a] tavern owner who provides alcohol to an intoxicated patron does not exercise control over the conduct of the patron, in driving or walking, for example," and that "regardless of any foreseeability, a duty does not exist to the general public, with respect to harm caused by a third party, absent the existence of a special relationship between the person sued and the injured party or the person sued and the third party." *Id*. at 183-84. These principles are nothing new, and our courts have

applied them consistently in both the dram shop, *see, e.g.*, *State v. Hatfield*, 197 Md. 249, 254-55 (1951); *Wright v. Sue & Charles, Inc.*, 131 Md. App. 466, 478 (2000), and social host contexts. *See, e.g., Hebb v. Walker*, 73 Md. App. 655, 658-59 (1988).

Unlike the typical dram shop or social host case, however, this case does not fail for lack of a duty. To the contrary, we now have held, and I wholeheartedly agree, that Steven Dankos[1] was a member of the class the General Assembly intended Md. Code (2002, 2012 Repl. Vol.), § 10-117 of the Criminal Law Article ("CL") to protect, and that the Statute or Ordinance Rule imposed a duty of care on Ms. Stapf. Slip op. at 22-29. Ms. Stapf had a duty not to serve him alcohol knowingly in her home, and she indisputably breached that duty. Nor was that duty vitiated, in my view, by Steven's decision to drink. Steven was a minor, and a minor to whom Ms. Stapf owed a duty, grounded in statute, not to serve him in the first place. So again, to the extent that the historic dram shop analysis severs the analysis at the drinker's decision to drink, *see* slip op. at 31-32, the source and nature of the duty we have recognized here flowed from Ms. Stapf to Steven precisely because he drank alcohol in her house with her knowledge. And in light of the specific scope of CL § 10-117 and the narrow class it protects, the General Assembly has already distinguished this case from *Hatfield* in that regard. *See* slip op. at 33.

It is not enough, though, just to find a duty. This case fails because Ms. Stapf's breach of her duty to Steven was not the proximate cause of his death. Instead, the proximate

---

[1] I will follow the majority's pattern of referring to Steven by his first name.

2

cause of his death was the intervening decision by Mr. Erdman–an adult, to whom Ms. Stapf did not owe the same duty–to drive drunk with Steven in the bed of his truck.  But in another case–if, for example, a minor drank to the point of alcohol poisoning, or perhaps was injured in a drunken fall in the server's house–the causal connection between the service of alcohol and the minor's injuries might justify a different result.  That case obviously must await another day, but I understand our opinion in this case to leave open that possibility within this narrow analytical space.